By the act of 1844 companies could be organized to make insurance on lives, c., and for all kinds of insurance. No deposit with the comptroller was required to be made by any company created under the laws of another State, but companies incorporated by any foreign government other than the states of this Union, were to have certain stocks, which were to be held in trust by citizens of this State (p. 444, § 7).
By the act of 1851, chapter 95, all companies transacting the business of life insurance within this State were to deposit with the comptroller $100,000 in public stocks or bonds and mortgages. The comptroller was to hold such stocks, bonds and mortgages as security for policy holders (§§ 1, 2). Section 3 relates to agents.
The act of 1853, chapter 463, is entitled an act to provide for the incorporation of life and health insurance companies, and in relation to agencies of such companies. By the 14th section, page 892, agents were prohibited from acting for companies organized under the laws of other states, unless such corporations possessed certain capital and securities deposited with one of the officers of the State under which the companies were organized.
By the 15th section, companies organized under the laws of foreign governments were prohibited doing business in this State until they had deposited with the comptroller, for the benefit of stockholders, c., securities to the amount of $100,000. By the 22d section, so much of the act of April 10, 1849, and of April 8, 1851, as relates to life insurance, was repealed; but this section was not to affect any company incorporated under such acts.
In my opinion, the requirements of the 1st and 2d sections of the act of 1851 were no longer in force after the passage of the act of 1853. The latter act contains clear and specific directions touching what shall be done by corporations created under the laws of other states, and also under the laws of a foreign government: in the latter, what deposits of sureties are to be made with the comptroller of this State. In the *Page 305 
former, the corporations are to possess a certain amount of capital invested in the manner specified, and such investments are to be deposited with the auditor, comptroller or chief financial officer of the State by whose laws said company is incorporated. The act carefully specifies the proof which such corporations are to furnish to the comptroller of this State, of the facts authorizing it to do business in this State. Such companies are permitted from time to time to exchange the securities so deposited with the auditor, comptroller or chief financial officer of the State in which such company is located, for other stock, authorized by the act. This section 14 was amended in June of the same year, chapter 551. Its substance, upon the question under consideration, is, that it shall not be lawful for any person to act within this State, as agent or otherwise, in receiving, c., c., for corporations organized under the laws of other states, unless such company is possessed of the amount of capital required ($100,000), and the same is invested in stocks of the United States, or of the State of New York, or of the State in which such company is located, or in such stocks and securities as now are or may hereafter be received by the bank department, which investments are deposited with the auditor, comptroller or chief financial officer of the State by whose laws the said company is incorporated, and the comptroller of this State is furnished with the certificate of such auditor, comptroller or chief financial officer aforesaid, under his hand and official seal, that he, as such auditor, comptroller or chief financial officer of such State, holds in trust and on deposit, for the benefit of all policy holders of such company, the security before mentioned, which certificate shall embrace the items of the security so held, and that he is satisfied that such securities are worth $100,000. It is added: But nothing herein contained shall be construed to invalidate the agency of any company incorporated by another State, by reason of such company having from time to time exchanged the securities so deposited with the auditor, comptroller or chief financial officer of the State in which such company is located, for other stock authorized by this act, or *Page 306 
by reason of such company having drawn their interest and dividends from time to time for such stock. Such company is to appoint an attorney in this State, on whom process of law can be served, and the attorney is to file with the comptroller a certified copy of the charter of such company, and also of the vote or resolution appointing him. When these requirements have been complied with, the comptroller is to give a certificate of the facts, and setting forth the name of the attorney, and when this certificate is filed in the county clerk's office, where the agency is to be established, it is to be the authority of the company to commence business. The company or its attorney is required annually to file with the comptroller of this State, a statement of their affairs, in the manner and form provided in section 12, for similar companies in this State. Here we have a complete system for life insurance companies, organized under the laws of either of the United States, and they are put upon the same footing as those organized under the laws of this State, as to the amount of their capital and the securities required to be filed. Companies organized under our statutes are to file securities with our comptroller, and the companies organized under the statutes of other states are to file the like securities and in the like amount with the auditor, comptroller or other chief financial officer of the State under whose laws the corporation was organized, to be held by such officer in trust and on deposit for the benefit of all the policy holders of such company. On furnishing the evidence required and appointing an attorney, c., the comptroller may give a certificate and the company may commence business.
The act of 1853 professes to provide a complete system for the incorporation of life and health insurance companies, and it contains a system perfect and complete in all its parts, by which corporations created under the laws of other states, for the purpose of such insurance, may do business in this State, and then it repeals the previous acts, so far as they relate to life insurance, saving, however, from its effects, the companies incorporated under those acts. *Page 307 
The act of 1851 was an act in relation to all companies transacting the business of life insurance in this State, and it required the filing of the securities with the comptroller in this State. By the act of 1853 all this is changed, and this part of the act of 1851 is abrogated and repealed, and another system is substituted. This act of 1853 provides for the organization of companies in this State, and after it became a law no new companies could be organized for life insurance under the act of 1849. In short, corporations created under the acts of other states were no longer required to file any securities with the comptroller in this State, but were to file them with the officer specified in their own states, and from that time I have no doubt such companies had a right to withdraw any securities they may have deposited with the comptroller in this State, unless it should be shown that policy holders in this State had acquired some lien upon them. At any rate, after the act of 1853 became a law, there was no necessity of any deposit of securities with the comptroller in this State as a prerequisite to its transacting business here. And as the securities filed with our comptroller were to be held as securities for policy holders in said companies, that is, all policy holders in general, whether in or out of this State, and as the language used in the act of 1853, touching the securities held by the auditor, c., is to the same effect, that is, holds in trust and on deposit for the benefit of all the policy holders of such company, it seems clear to me that the scheme of 1853 is a substitute for that of 1851, and that the securities held by the auditor, c., are pledged for all the policy holders of the company, whether such policies were issued prior to or after the act of 1853 became a law, and that the securities in the hands of the comptroller here were at once released upon the company complying with the act of 1853, and without such compliance it could do no more business in this State.
If the comptroller is to retain the securities after the company has complied with the act of 1853, the consequence will be that such company will be required to provide and file securities to the amount of $200,000, instead of $100,000: that *Page 308 
is, $100,000 with our comptroller and $100,000 at home with its auditor, c., and these securities will be held in trust in common for all policy holders of the company, or the company will be driven from this State by the act of 1853, leaving, however, its $100,000 securities in the hands of our comptroller, for the benefit of its policy holders then in this State and in other states, at that time, and for the benefit of future policy-holders in other States.
The truth is, that the requirement of the act of 1851 was very peculiar, if not unreasonable. The company was only required to possess a capital of $100,000, all of which was to be deposited with our comptroller, for the benefit of all its policy holders, though nine-tenths of them and the business of the company should be elsewhere than in this State.
Even under the act of 1851, I do not think that it could be fairly said that a company depositing $100,000 with our comptroller was using all of such capital in this State in life insurance, when, by the act, such securities were for the benefit of all its policy holders, wherever they might be. Only a small portion of its business may be done in this State; in other words, it may not use in its business in this State more than one-tenth of its capital, and its capital may not be in all more than $100,000.
I think the securities with the comptroller were not taxable, and the judgment of the Supreme Court should be reversed.
DENIO, Ch. J., WRIGHT, SELDEN and BALCOM, Js., concurred.
Judgment reversed. *Page 309