DETERMINED IN THE

# THIRD DEPARTMENT

AT

# GENERAL TERM,

## 𝔇𝔢𝔠𝔢𝔪𝔟𝔢𝔯, 1893.

---

THE PEOPLE OF THE STATE OF NEW YORK ex rel. AMERICAN
   SURETY COMPANY OF NEW YORK, Relator, *v.* FRANK CAMPBELL,
   Comptroller of the State of New York, Respondent.

*Corporation tax — capital stock employed in this State — real estate owned, and
   United States bonds deposited in other States, by a surety company.*

Portions of the capital of a domestic corporation of the State of New York
   organized for the purpose of guaranteeing the fidelity of persons holding places of
   trust, and of guaranteeing bonds and undertakings by joining as surety therein,
   invested in real estate in another State and in United States bonds deposited
   under a deed of trust in a third State and with the Minister of Finance in Can-
   ada, to enable the corporation to do business in such States and Canada, and to
   give it credit and to secure its bond or policyholders, generally, are not to be
   deemed "capital stock employed within this State" for purposes of taxation,
   although the investments are subject to the claims of all creditors of the
   corporation, and the income therefrom is received by the corporation at its
   home office in the State of New York, and is there used in its business. (MAY-
   HAM, P. J., dissenting.)

CERTIORARI to review the determination of the Comptroller of
the State of New York in the assessment of taxes made by him
against the relator, American Surety Company of New York,
under the corporation tax laws for the year ending November 1, 1891.

   The relator is a domestic corporation incorporated under the laws
of the State of New York, for the purpose of guaranteeing the
fidelity of persons holding places of public or private trust, and also
of guaranteeing bonds and undertakings required by law, by
joining as surety therein or otherwise.

*John J. Crawford*, for the relator.

*S. W. Rosendale, Attorney-General*, for the respondent.

PUTNAM, J.:

The question to be determined is, what part of relator's capital was used or employed within the State during the time in question. The total amount of the capital stock of relator was $1,000,000, and the Comptroller assumed that it was all employed within the State. During the year for which the tax was so assessed, it was shown that relator had $200,000 of its capital invested in real estate in Chicago; $121,187.50 in United States bonds, deposited under a deed of trust in Pennsylvania; and $60,500 of such bonds deposited with the Minister of Finance in Canada. These bonds it was shown were so deposited, and the real estate investment made, to enable relator to carry on its business in Pennsylvania, Illinois and Canada. Were the bonds so deposited in Pennsylvania and Canada, and the $200,000 invested in real estate in Chicago, being a part of the capital of relator, employed within this State? I think not. The $200,000 invested in real estate in Chicago was located out of this State, taxable in Illinois, and a part of the capital of relator placed in that State to enable it to there carry on business. It seems to me that such real estate may properly be deemed employed in Illinois. The way relator employs its capital is to keep it invested as a security for the benefit of those doing business with it. This $200,000 was invested in real estate in Illinois where those having claims against the corporation in that State could reach it. I think relator employed this portion of its capital in Illinois and certainly did not employ it in New York.

So the bonds deposited in Pennsylvania and Canada were a part of relator's capital not employed in this State. In the deed of trust to the Fidelity Insurance and Safe Deposit Company is the following provision, viz.: " And whereas, it is deemed expedient, and the said surety company is desirous of establishing and creating a trust fund in said Commonwealth of Pennsylvania, by the conveyance in trust of certain securities hereinafter named, for the protection and benefit of all of its bond or policyholders, wherever situated, subject, however, to the reservation named hereafter and to the trust and powers hereinafter provided."

These United States bonds, a part of the capital stock of relator, were deposited in Pennsylvania and Canada for the protection and benefit of its policyholders in Pennsylvania, Canada or elsewhere. The capital of relator to the extent of said deposit was represented by United States bonds, and these bonds were placed as above.  A creditor of relator in Pennsylvania or Canada could reach them in those places.  The capital of relator to the extent of the bonds was located out of the State.  The bonds in Pennsylvania were actually conveyed to the trustees, and those in Canada were delivered to the Minister of Finance.

I think the papers show that the bonds in Pennsylvania and Canada were employed in those places.  They were there to enable the corporation to do business, to give it credit, and secure its policyholders and creditors, and hence cannot be deemed to have been employed in this State.

I think these views are sustained by the case of *People ex rel. The Edison Electric Light Co.* v. *Campbell* (138 N. Y. 543).   In that case the relator's capital was originally invested in patent rights. It sold patent rights to various local corporations outside of the State, taking the stock of such corporations in payment, and the principal question in the case was, whether the stock of such local corporations held by the relator was capital of the relator employed within the State.  This General Term held that such stock was a mere investment.  That, presumably, the certificates were held by the corporation at its office in this State.  That such stock was *not employed* by the corporation out of the State, and hence should be deemed employed within the State.

This doctrine, however, was overruled by the Court of Appeals. The court held (page 546) :   " The stocks which relator took in companies organized outside of this State stood for so much of the relator's capital invested outside of the State.  It took a portion of its capital, to wit, a portion of its patent rights, and employed it outside of the State to purchase those stocks.  Its property in those corporations, represented by its shares of stock, was outside of this State, and was in no sense employed here.  Those stocks had no *situs* here, and were not taxable here under any system of taxation which has ever existed in this State.   *   *   *   As to a domestic corporation, it is sufficient to subject it to taxation under the act

**104** PEOPLE ex rel. AM. SURETY CO. *v.* CAMPBELL.

THIRD DEPARTMENT, DECEMBER TERM, 1893.          [Vol. 74.

that its capital was employed within the State, *and it is employed where it is kept and used for the purposes of the corporation.*"

It seems quite clear that the real estate in Illinois and the bonds transferred in trust in Pennsylvania, as well as those deposited with the Minister of Finance in Canada, cannot be said to have been kept or used within this State. Such property was required and used out of the State. In the case last cited the company held bonds of foreign corporations received in payment of patent rights, and such bonds were held to be taxable. The court used the following language in reference to them (page 547) : "Those bonds were presumably held at its office in this State, and such bonds, as well as all choses in action, unless kept, employed or used outside of the State, have their situs at the domicile of the owner." In the case under consideration the bonds are shown to have been kept outside of the State, and there used to enable relator to carry on its business.

In the case referred to it was held that, to entitle the corporation to exemption on account of that part of its capital stock invested in the stocks of foreign corporations, it was not necessary that such portion of its capital stock should be employed in business outside of the State. All that was necessary to entitle the corporation to exemption was that such portion was not employed within the State.

It is suggested by the learned Attorney-General that the bonds of relator in question and the real estate in Illinois were subject to the claims of all creditors of the corporation, and that the income arising therefrom was received by the relator at its office in New York. The same, however, could be said in reference to the stocks of the foreign corporation referred to in *People ex rel. Edison Electric Light Co.* v. *Campbell* (*supra*). The stock referred to in that case was subject to all claims against the company, and presumably the income thereon was received by the corporation at its office in New York. It was also presumably received at that office and there used in the business of the corporation. It is to be inferred that all the business of the corporation was conducted at the New York office, and in carrying on the same the corporation used the income received from said stocks.

I think the determination of the Comptroller should be reversed, with costs to the relator.

HERRICK, J., concurred.

MAYHAM, P. J. (dissenting):

The relator is a corporation organized under the second department of chapter 463 of the Laws of 1853, and the several acts amendatory thereof and supplementary thereto, and has since its organization been engaged in the business for which it was incorporated, having its principal office in the city of New York.

The relator being liable to pay a tax into the State treasury for the use of the State under the provisions of chapter 542 of the Laws of 1880, as amended by chapter 361 of the Laws of 1881, and the several acts amendatory thereof and supplemental thereto, on the 12th of November, 1891, forwarded its report to the Comptroller, of which the following is a copy:

"NEW YORK CITY, *Nov.* 12, '91.

"*To the Comptroller of the State of New York:*

"Agreeably to law, as treasurer of the above company, I make the following report, viz.:

"1. Date of organization of company, April 14, 1884.

"2. Total authorized capital of company, $1,000,000.

"3. Whole number of shares of stock authorized, 20,000.

"4. Number of shares of stock issued, 20,000.

"5. Par value of each share, $50.

"6. Amount paid into the treasury of the company on each share, $50.

"7. Amount of capital paid in, $1,000,000.

"8. Amount of capital upon which dividends were declared, $1,000,000.

"9. Date of each dividend, declared December 17, 1890, and June 25th, 1891.

"10. Amount of each dividend declared, $30,000.

"11. Rate per cent per annum of dividends, 6 per cent.

"12. Capital stock employed in New York State, $618,750.

"13. If not in New York State, where and how employed, $100,000 U. S. reg. 4 per cent bonds (cost value, $119,750). Deposited with the Fidelity Ins. Title Trust and Safe Deposit Co. of Philadelphia, Pa. $50,000 U. S. reg. 4 per cent bonds, cost value $61,500. Deposited with the Finance Minister of Canada, and the sum of $200,000 invested in real estate in the city of Chicago, Ill.          S. S. COLVILLE,

"*Treasurer.*"

**106** PEOPLE ex rel. AM. SURETY CO. *v.* CAMPBELL.

THIRD DEPARTMENT, DECEMBER TERM, 1893.     [Vol. 74.

Subsequently to the filing of the report by the relator the Comptroller imposed a tax in the following words and figures :

" COMPTROLLER'S OFFICE, }
" ALBANY, N. Y.     }

" The American Surety Company,
" 160 Broadway,
" In account with the State of New York, Dr.

" For tax on franchise or business, based on dividends on capital stock employed in New York State, per chapter 542, Laws of 1880, as amended by chapter 361, Laws of 1881, chapter 151, Laws of 1882, chapters 359 and 501, Laws of 1885, chapter 353, Laws of 1889, and chapter 522, Laws of 1890, for the year ending November 1, 1891, as per report filed.

" Dividend 6 per cent on capital stock of $1,000,000.

" Tax 1½ mills (¼ mill for each one per cent of dividend), $1,500.00."

The relator thereupon asked for a revision and readjustment of said account for tax against said company before the Comptroller, and after such hearing the Comptroller made an order affirming the assessment and tax as originally fixed by him.

The main contention of the relator now is that from the original report and upon the evidence on such application for readjustment, it appears that a considerable portion of its capital was employed out of this State, and was not, therefore, liable to taxation by the Comptroller in this State.

This contention is based upon the fact that $121,187.50 of the relator's funds or property was invested in United States bonds, which were deposited under a deed of trust in the State of Pennsylvania, $60,000 of the capital stock invested in like bonds which were deposited with the Minister of Finance in Canada, $200,000 invested in real estate in the city of Chicago, Ill., and $35,000 of its property in railroad bonds, deposited with the Commissioner of Insurance in the State of Texas, and that these securities were deposited in the States and country under laws or regulations with the government of the same, for the purpose of enabling the relator to carry on its business there.

This question seems to arise chiefly on the construction that is to

PEOPLE ex rel. AM. SURETY CO. *v.* CAMPBELL. 107

Hun.]        THIRD DEPARTMENT, DECEMBER TERM, 1893.

be put upon section 11 and the other sections which were added to the provisions of chapter 542 of the Laws of 1880 by chapter 501 of the Laws of 1885. The added section 11 provides that, " In making to the Comptroller the report in writing or certificate of estimate and appraisal of the capital stock of such corporation, joint-stock company or association, provided for by the first section of this act, it shall be the duty of the president or treasurer thereof, as the case may be, to state specifically the amount of capital stock employed within this State of such corporation, joint-stock company or association."

Added section 14 of this act provides that, " The Comptroller is hereby authorized and directed, upon application to him made by any corporation, joint-stock company or association, to make, settle and adjust all accounts against such corporation, joint-stock company or association, for all taxes and penalties arising under the 3d section of this act since the 12th day of May, A. D. 1882, by taking as a basis for taxation the capital employed within the State by such corporation, joint-stock company or association."

This act was again amended by chapter 353 of the Laws of 1889, by inserting a provision in the 3d section as follows : " If the dividend or dividends made or declared by such corporation, etc., * * * during any year ending with the 1st day of November amount to six or more than six per centum upon the par value of its capital stock, then the tax to be at the rate of $\frac{1}{4}$ mill upon the capital stock for each one per centum of dividends so made or declared."

It is not clear but that the provisions of the added sections 11 and 14 in the act of 1885, so far as they relate to the taxation of the capital employed in this State, were repealed by the provisions of section 3 of chapter 353 of the Laws of 1889, above quoted.

But as the learned Attorney-General does not seem to have discussed the effect of that amendment we are inclined to examine the question as it is presented by the proof under the provisions of the Laws of 1885, above referred to. What then must be the effect of the language of sections 11 and 14 of chapter 501 of the Laws of 1885, which in effect provides that the tax must be upon the basis of the capital " employed within the State ? "

Was the entire capital stock employed in this State within the meaning of this act? The principal office was in this State, and dividends were declared in this State; all of its assets were subject to its liabilities, which were constantly being created in this State. Suppose it had given its guaranty to the amount of its deposits in Pennsylvania, as a basis of doing business in that State; would that have reduced its assets in this State? Clearly not. Would the deposit of collaterals, instead of the giving of its bonds, be any different in effect? It seems to me not. It was simply putting up collaterals as a guaranty for the performance of its obligations incurred in another State or country. Such collaterals would be subject to recall by the company whenever its obligations for the security of which they were pledged were performed.

Under such circumstances it seems to me that the *situs* of such securities would still be in this State, where their owner resides, and to whose control they are at any time subject.

The same would, I think, be true of the railroad securities in Texas, and the deposits in the Dominion of Canada. Let us take for illustration the government bonds required to be deposited in the Federal treasury as security for the circulation of the banks. Could the bank making such deposits claim, for obtaining immunity from taxation upon its stock, that because of the deposits of such collaterals, its capital represented in fact by such bonds was not within this State, and was not employed in this State, and had no *situs* here, and was for that reason exempt from taxation?

It is true that the method of taxing the stock of banks and other moneyed corporations is quite unlike that of taxing corporations of the character we are discussing. But there is similarity in this, that the corporation is located in a State, and its deposits, as collateral security for its circulation, are or may be in an entirely different territory or jurisdiction.

The bond remains the property of the bank, and may be redeemed by the bank, and the return and retirement of the circulation secured by it. The bond represents the capital of the bank and the interest of the stockholder in it. So in the case of the corporation under examination, the bond, either government or railroad, represents the capital of the corporation and the interest of the individual stockholder, and its *situs* would seem from analogy to be controlled

PEOPLE ex rel. AM. SURETY CO. *v.* CAMPBELL. 109

Hun.]          THIRD DEPARTMENT, DECEMBER TERM, 1893.

in the one case as in the other by the location of the principal business, and the capital stock in both cases would seem to have its *situs* where the bank or corporation is located.

We are cited by the learned counsel for the relator to the case of *People ex rel. Davis-Colby Co.* v. *Campbell* (66 Hun, 146) as one supporting his contention. It is true that that was a domestic corporation incorporated under the laws of New York, and authorized to do business in this and other States. But during the year for which the tax was imposed it moved its office for the transaction of business to the State of Pennsylvania. It made no sales within this State during the year; it manufactured nothing within the State; it occupied no premises, paid no rent, and employed no men within the State during the year.

It did no business within the State during that year. It manufactured ore roasters, kept a bank account, employed servants, and paid them outside of the State. Upon these facts this court held that the entire business and capital were employed outside of the State, and under such circumstances could not be taxed by the Comptroller in this State.

It needs no argument to show that that case is distinguishable from this. The decision of that case is fully supported by the decisions in *People ex rel. S. C. O. Co.* v. *Wemple* (131 N. Y. 64) and *People* v. *Horn Silver Mining Co.* (105 id. 76). In *People ex rel. Seth Thomas Clock Co.* v. *Wemple*, it was held that if a corporation has no property and no business within the State there is no basis upon which to compute a tax. (133 N. Y. 323.)

In this case the court held that establishing an agency in this State and selling by sample goods manufactured in the State of Connecticut, carried with it to this State no part of the capital stock, and could not be deemed an employment of the capital stock of the Connecticut corporation in this State.

It might sell its whole product by sample from an office in New York to be delivered to the purchaser from the factory, and yet not employ any part of its capital within the State. It is, therefore, apparent that the mere transaction of the business of a corporation in another State is not the employment of its capital there.

It follows that the mere transaction of business by this company in Pennsylvania, Texas and Canada was not the employment of its

110 PEOPLE ex rel. AM. SURETY CO. *v.* CAMPBELL.

THIRD DEPARTMENT, DECEMBER TERM, 1893.        [Vol. 74.

capital there. The case last cited also holds that if the foreign corporation kept on hand within this State goods from which it sold and made shipments in the usual way, or money deposited here and used in its business, to that extent it would be employing its capital here, which would be subject to taxation.

But it will be observed that the relator had no goods or money in other States or country which it used in its business.

There does not appear to be any authority to pay one dollar of its guaranty or indemnity bonds out of the government bonds deposited in Pennsylvania or Canada, or the railroad bonds in Texas, in the management or conduct of its business in those foreign States. We are, therefore, of the opinion that in depositing these securities out of the State, the relator did not remove its capital stock beyond the jurisdiction of the State, but that it still continued to employ the same in the transaction of its business in this State. There does not appear to be any law or statute regulation in Pennsylvania under which the relator could deposit its bonds in the insurance department, or any other department of the State government, as a condition for doing business in that State, and the bonds would not, therefore, be taxable in that State within the principle of the decision of the case of *The People* v. *New Eng. Mut. Life Ins. Co.* (26 N. Y. 303).

Nor have we been able to find any evidence in this case of any statute or law of the Province of Canada or of the State of Texas requiring the deposits of its collaterals in those jurisdictions.

Assuming, as we must, in the absence of proof, that the law of that State and Province are like our own on this subject, the case referred to in 26 N. Y. 303 (*supra*) would govern. But if we are wrong in our conclusion that the deposit of these securities outside of the State did not take that amount of capital stock outside of the State, still it seems to me that that capital could be deemed employed there only to the extent of relator's business transacted in those places, and I find no evidence in the rehearing before the Comptroller of the transaction of any business outside of the State.

The Comptroller was, therefore, authorized to hold that such deposits were only for safe-keeping or investment in aid of its business carried on in this State, and that the income from the same was realized and used in such business. (*People ex rel. Postal Tel. Cable Co.* v. *Campbell*, 24 N. Y. Supp. 208.)

We are, therefore, of the opinion that the tax was properly imposed in this State as to the capital claimed to be employed by the relator in Pennsylvania, Texas and Canada.

The remaining question is as to the property of this company invested in real estate in the State of Illinois.

Was the property invested in that State employed in this State? It was leased by the relator and rents were remitted to the home office in New York; was not occupied by the relator for offices or in any other way for the transaction of its business, except to give some kind of local credit in that State to the relator's business transacted there. While it must be conceded that this case is not free from doubt, we are inclined to the opinion that the relator has failed to establish that the assessment was erroneous.

In this proceeding the *onus* is upon the relator to affirmatively establish the error. The rule upon this subject is settled that when a corporation is subject to taxation under this act the determination of the Comptroller as to the assessment and tax, unless clearly shown to be erroneous, will be sustained. (*People ex rel. American Contracting & Dredging Co.* v. *Wemple, Comptroller*, 129 N. Y. 558.)

On the whole we think the determination of the Comptroller must be confirmed and the writ of certiorari quashed.

Determination of the Comptroller reversed, with fifty dollars costs and printing and other disbursements.