## No. 13,069.

### Cochrane, Commissioner v. Pacific States Life Insurance Company et al.

(27 P. [2d] 196)

Decided November 6, 1933.

Mr. Clarence L. Ireland, Attorney General, Mr. Sidney P. Godsman, Assistant, for plaintiff in error.

Mr. R. H. Walker, for defendants in error.

*En Banc.*

Mr. Justice Campbell delivered the opinion of the court.

The plaintiffs below, defendants in error here, are life insurance corporations organized and existing under the laws of the state of Colorado. Each of them is a legal reserve company and under its charter is a joint stock company and has power to make insurance upon lives and to issue health and accident insurance and to grant, purchase and dispose of annuities, and is duly licensed and authorized by the insurance commissioner of Colorado to carry on such business. The Pacific States company since its organization has been actually engaged in the business of insurance in Colorado and other states as authorized by its charter and the laws of the state. The Farmers Life Company was for a time engaged in the same kind of business until it transferred its business and assets to the Pacific company. In June, 1931, these two companies entered into a contract in writing of reinsurance, by the terms of which the Pacific company agreed to insure and become liable upon, and to pay and discharge all insurance risks theretofore contracted by the farmers company, and to pay and discharge all debts and liabilities of the latter, in consideration of which the farmers company agreed to assign and transfer to the Pacific company all of its securities, assets and property of every kind, including the securities of the farmers company on deposit with the commissioner of insurance of Colorado. This contract of reinsurance was submitted

to the plaintiff in error Cochrane as the commissioner of insurance of the state of Colorado and the contract seems to have been entered into under his supervision. Thereafter and in July, 1931, at a special meeting of the stockholders of the farmers company, this contract was ratified and approved by the farmers company. In accordance with the contract between the two companies the securities and all property of the farmers company were thereupon transferred to the Pacific company and this contract was filed with the commissioner of insurance. The capital stock of the farmers company was delivered to the Pacific company and all of the holders of policies of insurance theretofore issued by the farmers company were notified of the insurance contract and of the assumption of the policies by the Pacific company; that in accordance with sections 2481 and 2495, C. L. 1921, as amended, the farmers company had theretofore deposited with the commissioner of insurance approved securities of the value of not less than $100,000, which securities, pursuant to the reinsurance agreement above mentioned, have been assigned to the Pacific company and a correct list of such securities has been deposited with the Colorado commissioner of insurance. The petition further alleges that said section 2481, as amended by the Session Laws of 1925, provides that deposits made with the commissioner of insurance thereunder shall be only such as shall constitute assets of the company and the company may deposit, withdraw or exchange or substitute any securities at any time provided the total amount thereof remaining on deposit shall not be less than required by law, and the petition says that under such section when a domestic insurance company reinsures all of its business, as was done in this case, in another company, the securities deposited by the reinsured company with the commissioner of insurance, may, subject to any existing liens against, and restrictions upon, them, be assigned or transferred to the reinsuring company and the latter company as assignee shall thereupon acquire

all rights and interest of the reinsured company in such securities and shall be entitled to all the rights and privileges of the reinsured company pertaining thereto, and that if a domestic insurance company, having securities on deposit with the commissioner of insurance, shall reinsure all of its business, as was done in this case, such securities may only be withdrawn through an order of a court of competent jurisdiction, except for the purpose of exchange or substitution. Then follows an allegation that in accordance with the terms of the reinsurance agreement in this case, the Pacific company has assumed and agreed to pay all the liabilities and obligations of the farmers company. It is also alleged that there are no liens of any kind or restrictions on any of the securities that have been deposited by the farmers company with the commissioner of insurance, and that the Pacific company is a solvent, going concern and for a long period of time has had on deposit with the commissioner of insurance securities in excess of $200,000 for the protection of policyholders, and that included in such deposit is $100,000 which the statute of the state of Colorado requires as a minimum capital deposit; that exclusive of such securities formerly belonging to the farmers company and now on deposit with the commissioner of insurance of Colorado, the Pacific company has and will have a greater sum on deposit with the commissioner of insurance than is required by the laws of the state, and that such reinsurance is a full, complete and ample protection to all policyholders of the farmers company. The Pacific company therefore expresses a desire in its petition to withdraw from deposit with the commissioner of insurance the securities formerly belonging to the farmers company, amounting to $100,000, and has made application to the commissioner for such withdrawal, but the commissioner has declined to permit such withdrawal unless and until an order of court be made to that effect as provided by said section 2481, supra. The prayer of this petition, which in substance has been above summarized,

is that the court make an order authorizing and directing the withdrawal by the Pacific company of all securities heretofore deposited by the farmers company with the Colorado insurance commissioner and now on deposit with him, and authorizing and approving the delivery of such securities to the petitioner Pacific company, and that the commissioner of insurance and the sureties on his official bond be released of all liability for and on account of the withdrawal of such securities. Subsequently the petitioners filed an amendment to the foregoing mentioned petition to the effect that the petitioners desire to withdraw from deposit the securities formerly belonging to the farmers company, and have made application to the commissioner of insurance for leave to make such withdrawal and that the commissioner has consented to withdrawal of the sum in excess of $100,000 but has declined to permit the withdrawal of securities under or below the amount of $100,000 unless order of court be made to that effect as provided by section 2481, supra, and the prayer of the petition is amended accordingly.

To this petition as amended the commissioner of insurance, by the attorney general of the state, filed a general demurrer that the facts stated therein are not sufficient to constitute a cause of action against the insurance commissioner. The court overruled the demurrer and the commissioner was given ten days to file an answer to the petition if so advised. The insurance commissioner did not avail himself of the permission to file an answer, but stood by his demurrer. The court thereupon found the issues joined in favor of the petitioners and by its order authorized the Pacific company to withdraw from the custody and possession of the insurance commissioner all securities held by him belonging to and constituting a deposit by the Farmers Life Insurance Company, and further ordered the commissioner to surrender such securities to the petitioners. The commissioner of insurance is here with this writ of error to the final judgment of the district court authorizing such withdrawal.

In the briefs of counsel for the respective parties, the discussion has taken a wide range. In the light of the undisputed stipulated facts, and the law of the case, which we think has already been declared by this court, this discussion might well have been curtailed. The attorney general thus states the questions presented for decision: 1. Have the policyholders in the farmers company, whose policies were written prior to April 23, 1925, an equitable interest in that deposit of $100,000 of securities in possession of the commissioner? 2. Is section 2481, C. L. 1921, as amended by section 4, chapter 117, S. L. 1925, retroactive as against these policyholders whose policies were written prior to the latter date? Counsel for the insurance companies embodies his contentions in the three following statements: 1. That the statute of 1925 by its terms applies, and was intended to apply, to deposits made prior to its enactment as well as after. 2. That the maintenance of the deposit, irrespective of changes in the law requiring it, was no part of the contract between the insurance company and the policyholder as embodied in policies issued prior to 1925. 3. That the policyholders had, and have, no vested interest in the deposit or in the statutory provision requiring it.

The attorney general for the purpose of this case, apparently assumes, although he does not expressly so state, that section 2481, supra, as amended by section 4, chapter 117, S. L. 1925, would permit the withdrawal of these deposits as demanded by the Pacific company, but he contends that this controversy must be determined by a proper construction and effect of our statute law as it existed before the passage of the 1925 act, and while the previously enacted statute of 1913 was in force. We think the attorney general is right in this and that the dispute between these parties must be based upon the statute law as it was before this 1925 act was passed. This controversy must, therefore, be determined upon the assumption that the legislative act of 1913, section 2481, C. L. 1921, is the one upon which the rights of the

parties to this controversy depend. This section of the statute makes it the duty of the insurance commissioner, upon receipt of securities deposited with him, forthwith to deposit the same in a strong iron box where they must remain and not be opened except upon conditions specified in this section. The statute intended that such securities should be maintained for the benefit of policyholders who took out their policies while the 1913 statute was in effect and before the amendatory act of 1925 was adopted.

Section 2480, C. L. 1921, amending the 1913 act, provides that the insurance commissioner shall receive and hold on deposit such securities of domestic companies which are deposited with him under the provisions of the act for the purpose of securing the policyholders, and it further provides that all such securities so offered for deposit shall belong to and be the sole property of such company and shall be free and clear of any claims whatsoever. The securities in controversy were deposited for the express purpose of securing to the policyholders the policies which had been issued to them and it was an exclusive trust for such purpose only and remained in force until the object and purpose had been fulfilled and discharged.

We think this is the better rule and one which has been recognized heretofore by this court in *Van Gilder v. Parker*, 69 Colo. 196, 193 Pac. 664, where the court held that section 2480, which is in substance the same as section 3098, R. S. 1908, would not permit the withdrawal from the fund of securities deposited thereunder for the purpose of securing policyholders, it being further held that a promissory note executed and delivered to an indemnity company to secure its policyholders cannot be surrendered until the last of the policyholders is satisfied in full, and the facts that the policies have been reinsured and that the receiver of the company holds sufficient funds to secure all outstanding policies, cannot avoid this conclusion, because the court cannot know whether,

upon the occurrence of a loss, these other securities or the reinsurance will still be available, and has no right to reduce the security of the policyholders in the least. The Van Gilder case seems to be exactly in point.

In *Bank v. Arthur,* 10 Colo. App. 283 (50 Pac. 738), at 285, our Court of Appeals held: "The law existing at the time when a contract is made is a part of it." To the same effect is *Relfe v. Columbia Life Ins. Co.,* 10 Mo. App. 150, 168, 169. The Missouri court had before it for construction a statute quite similar to our section 2480. The court there said: "The policyholders of each reinsured company could not, without their consent, be divested of their equitable right to have this fund held and kept up as a security for the payment of their policies."

In *Lovell v. St. Louis Mutual Life Ins. Co.,* 111 U. S. 264, 273, 4 Sup. Ct. 390, among other things, the court said: "If the complainant does not choose to continue his insurance with the new company, he would have no remedy except against the old company (which is totally unable to respond) were it not for the fund which has been attached in the hands of the State Treasurer of Tennessee. To this fund the complainant, being a citizen of Tennessee, had a right to resort. The object of the laws of Tennessee in requiring the fund to be placed on deposit with the treasurer was to protect and indemnify its own citizens in their dealings with the company. The assignment to the new company in Missouri could not deprive them of the right to this indemnity."

In *People v. National Surety Co.,* 68 Colo. 231 (188 Pac. 653), at pages 235, 236, a similar doctrine is announced. The insurance companies' counsel, however, says, and makes a vigorous argument in support of the contention, that both the statute of 1925 and the statute of 1913 apply to this case, and were intended to apply, to deposits made prior to their enactment as well as after. We think, however, the decisions already quoted are a sufficient answer to this contention. The 1925 amendment in question relied upon by the insurance companies,

apparently was made to work a change in the previously enacted statute of 1913. There would have been no necessity for the 1925 act if the former one, which was in existence at the time the securities in this case were deposited, is to be construed as identical in meaning with the latter. The insurance companies further say that policyholders never had, and do not now have, a vested interest in the deposits or in the statutory provision requiring them. Section 2495, C. L. 1921, in question, we think sufficiently answers this contention of the insurance companies. It requires that a deposit be made with the insurance commissioner of the state of a sum not less than the capital required of like companies under this act, and it also reads: "Such deposit must be an exclusive trust for the benefit and security of all the company's policyholders and creditors in the United States."

The petitioners insurance companies say that this deposit may now be withdrawn, on the doctrine of *People v. New England Mutual Life Ins. Co.,* 26 N. Y. 303. Without pausing to discuss this case, it is sufficient merely to say that it is contrary to the doctrine declared by this court in the Van Gilder case, supra. We are not disposed to overrule our own decisions. The next case that is cited and relied upon by the petitioners is *Alliance Mutual Life Assurance Society v. Welch,* 26 Kan. 632. We do not think this case is in point. There was no such Kansas statute as we have, forbidding the withdrawal of such deposits as were made in the case now before us, and while there is language in the opinion of the Kansas court which apparently sustains the position of the petitioners here, we think that such language was dicta and not at all essential to the conclusion reached by the Kansas court in that case. The chief reliance of the insurance companies seems to be *Illinois Life Ins. Co. v. Tully,* 174 Fed. 355, 98 C. C. A. 259. We have read the opinion in this case with care and do not consider it in point here because the Kansas statute at the time the

policies were issued did not require a deposit such as our statute of 1913 makes imperative. The court in that case, among other things, said: "The result is that the act of 1879 which required not only the depositing of the securities, but imposed the duty upon the treasurer to hold them, was repealed before the contract of reinsurance involved in this case was made." Further, the court said: "Neither the law of Kansas nor the contract in any rational interpretation of it required the retention of the deposits in question, and they afford no authority for the treasurer's present contention." Indeed, properly considered, the opinion in the Tully case itself clearly shows that the doctrine there laid down, sustaining the claimed rights to the withdrawal of deposits in that case, does not apply to the facts of a case like the one now before us for decision. We take the liberty of quoting the language of Circuit Judge Adams in the Tully case: "Whether the deposits, amounting to nearly all the assets of the Kansas Company, should be retained in the possession of the treasurer as security for the policyholders of that state was, as now appears in this case, a matter of grave concern and importance to them. Yet when two-thirds of the policyholders approved the reinsurance contract as proposed by the Illinois Company, and when the balance of them accepted a novation of the old company's obligation and took their insurance from the Illinois Company pursuant to the terms of the contract, instead of taking (as they might have done) their equitable share of the assets of the Kansas Company, they thereby determined that, notwithstanding the want of any provision in the contract of reinsurance for the treasurer's retention of the deposits, they would avail themselves of the reinsurance as proposed by the Illinois Company. They had opportunity to determine their action in view of the fact that there was no provision requiring the retention of the deposits by the treasurer and did so. To hold that they can now avail themselves of the representations contained in the circular, to en-

force an obligation which in their final contract they made no provision for and were content without, would destroy the sanctity and conclusiveness of the written contract, and open it to considerations which were the subject of negotiation, but which were not deemed important enough to embody in the concluded contract. This cannot be done.''

There are some expressions in the opinion in the Tully and in the Welch cases, supra, that may be considered as supporting the contentions of the insurance companies in the case we are now considering, yet the opinions in those cases themselves clearly differentiate the cases before those courts from the case which we have before us.

■ To sum up, we hold that under the pertinent provisions of the statutes in force at the time this controversy arose, the policyholders of the insurance companies who took out their policies previous to the enactment of the statute of 1925, had a vested right and interest in and to the securities which theretofore had been deposited with the commissioner of insurance by the insurance company, and it was beyond the power of our General Assembly, even if it attempted to do so, to authorize a withdrawal of such deposits over the objection of such policyholders which was in due time interposed by the insurance commissioner acting in their behalf.

The judgment of the district court is therefore reversed, and the cause is remanded with instructions to dismiss the petition, costs below and here to be taxed to the petitioners.