THE PEOPLE ex rel. THE SETH THOMAS CLOCK COMPANY,
Appellant, *v.* EDWARD WEMPLE, as Comptroller, etc.,
Respondent.

Under the provision of the act providing for the taxation of certain corporations (Chap. 542, Laws of 1880; amended by chap. 361, Laws of 1881; chap. 151, Laws of 1882, and chap. 359, Laws of 1885), prior to the amendment thereof in 1889 (Chap. 353, Laws of 1889), a foreign manufacturing corporation, actually carrying on a portion, however small, of its manufacturing operations within this state, in the ordinary and regular course of its business, in good faith, was exempt from taxation.

*It seems,* however, if the operations of such a corporation in this state had been confined to putting together and adjusting to each other the different parts of articles manufactured by it, or to performing some slight operation that might be necessary before using or exposing its manufactures for sale, this would not have exempted it from taxation; to entitle it to the exemption, the whole or some part of the article must have been manufactured here from the original materials.

The basis of taxation of a foreign corporation under said act is the portion of its capital employed within the state; this is represented by the actual value of property, whether in money or goods, or other tangible things.

The comptroller, in imposing a tax upon such a corporation, ascertained the total sales made by it and the sales made in this state, and decided that the capital stock employed in the state was in proportion to the whole capital, as the amount of sales made here was to the total amount of sales. It appeared that a large part of the sales made here was by sample, the goods being delivered to the purchaser direct from the manufactory of the corporation in another state. *Held,* that sales so made did not represent capital employed in this state, and that the basis so adopted was erroneous.

(Argued April 25, 1892; decided May 24, 1892.)

APPEAL from order of the General Term of the Supreme Court, in the third judicial department, made November 24, 1891, which confirmed the proceedings of the comptroller of the state in assessing and imposing a tax upon the relator, a foreign corporation.

The facts, so far as material, are stated in the opinion.

*William S. Cogswell* for appellant. The objection that the court has no jurisdiction to review the determination of the

comptroller by writ of certiorari, was properly overruled. (*People* v. *Wemple*, 60 Hun, 225; 29 N. E. Rep. 808.) The relator is not liable to taxation for the years prior to 1889. (Laws of 1880, chap. 542, § 3; *People* v. *H. S. M. Co.*, 105 N. Y. 82; *People* v. *Davenport*, 91 id. 594; *People* v. *Dry Dock Co.*, 92 id. 482; *People* v. *K. I. Co.*, 99 id. 181; *People* v. *Wemple*, 29 N. E. Rep. 808.) The tax imposed for the several years, from 1880 to 1890 inclusive, is unjust, excessive and contrary to law. (Laws of 1880, chap. 542, § 3; *People* v. *Coleman*, 126 N. Y. 433.)

*S. W. Rosendale, Attorney-General*, for respondent. The relator was not exempt from taxation during the years 1880 to 1888, inclusive, under the provisions of section 3 of chapter 552 of the Laws of 1880, as amended by chapter 361 of the Laws of 1881, and chapter 359 of the Laws of 1885, as a manufacturing corporation carrying on manufacture within this state. (*People* v. *H. S. M. Co.*, 105 N. Y. 76; 143 U. S. 305; *People ex rel.* v. *Wemple*, 129 N. Y. 543.) The return shows that the relator was not engaged in manufacturing in the state. This is conclusive and must be acted upon as true. (*People* v. *Fire Comrs.*, 73 N. Y. 437.) The finding of the comptroller, as to the amount of capital of the relator employed in this state, is sufficiently supported by the evidence, and cannot be disturbed upon the review of his proceedings by certiorari. (*People* v. *Comrs.*, 23 N. Y. 192; 2 Wall. 200; *St. R. R. Tax Cases*, 92 U. S. 602; *R. R. Co.* v. *Vance*, 96 id. 455; *People* v. *Coleman*, 126 N. Y. 438; Code Civ. Pro. § 2140; *Morss* v. *Sherrill*, 63 Barb. 21; *McKinley* v. *Lamb*, 64 id. 199; *Hickinbottom* v. *D., L. & W. R. R. Co.*, 15 N. Y. S. R. 11; *People ex rel.* v. *Wemple*, 129 N. Y. 558.)

O'BRIEN, J. The comptroller imposed a tax upon the relator, a foreign corporation organized and existing under the laws of the state of Connecticut, of $5,605.51 for the years 1880 to 1890, both inclusive, under chapter 542 of the Laws

of 1880, as amended by subsequent enactments.   The relator, insisting that the tax was illegal, applied to the comptroller, under chapter 463 of the Laws of 1889, for a revision and readjustment, and that application having been denied, sued out a writ of certiorari, under the same statute, to review the decision. The General Term, where the writ was returnable, affirmed the determination of the comptroller, and the relator has appealed to this court.   A foreign corporation, carrying on business within this state, unless it appears that it is within some one of the exceptions contained in the statute, is subject to taxation.   The basis of the tax in such cases is the "amount of capital stock employed within this state."   If it does not employ any of its capital stock here, there is no basis for taxation.   So also, a foreign manufacturing corporation actually engaged in manufacturing within this state was exempt from taxation the same as a domestic corporation of the same character.   This exemption was restricted by chapter 353 of the Laws of 1889, which requires that the corporation, in order to be entitled to claim the exemption, shall be " wholly engaged in carrying on manufactures within this state."   The legislature, in passing this amendment, intended to apply a new rule to the taxation of foreign manufacturing corporations.   Under the statute, as originally enacted, the inquiry was whether such a corporation was actually carrying on manufacturing within this state.   If it was, then it came within the exemption, even though the greater part of its manufacturing operations were carried on at home.   If it was carrying on enough of its manufacturing operations in this state so that it could be said, fairly and reasonably, to be engaged in manufacturing here, then it came within the letter and the spirit of the exemption clause, and neither the comptroller nor the courts had the right to hold that because only a comparatively small portion of all its manufacturing operations were carried on here, it was not, for that reason, within the exemption.   If the corporation, in the ordinary and regular course of its business, in good faith and not for the purpose of evading the law, was actually carrying on any part of its manufacturing operations here, that was

enough.   It was not left for the taxing officer or the courts to prescribe how much or what percentage of its whole manufacturing business should be done within this state in order to entitle the corporation to claim the exemption.   If the legislature, in providing that manufacturing corporations should be exempt from taxation, intended, as it probably did, to encourage and foster manufactures within the state, the policy of the law would apply as well to a corporation carrying on a small business as to one engaged in larger and more extensive operations.   One foreign corporation might find it necessary or convenient to carry on a large part of its manufacturing operations here while another would desire to carry on only a very small part, but this circumstance would not furnish a reason for holding that the former was within the exemption and the latter was not.   As to the tax imposed upon the relator for the years 1889 and 1890, and after the amendment referred to, this question does not arise.   That can be questioned only with respect to the amount and the basis of computation adopted by the comptroller.   But it does arise with respect to the tax levied for the years preceding.   The relator is engaged extensively in the manufacture of clocks and watches.   It has large factories for that purpose in Connecticut, and there the principal part of its manufacturing operations are carried on.   It has a business office and sales agency in the city of New York, where the greater part of its contracts for the sale of the products of its factories are made.   It appears also that during the year for which the tax was levied, it actually manufactured within this state to the extent of from $16,000 to $20,000 in each year.   The record does not show the particular character and nature of the relator's operations in this state, claimed to constitute manufacturing within the statute.   In the opinion of the court below, it is said that what the relator calls manufacturing probably consists in some incidental additional work to the manufactured products forwarded from Connecticut, such as may conveniently and suitably be added at the place where the goods are exposed for sale.   If this were the fact, it would not bring the relator

within the exemption. A manufacturing corporation of another state cannot bring its products here, and by putting the several parts together and adjusting them to each other, or by performing upon the article some slight operation, though it may involve labor that may be necessary before using it or exposing it for sale, and thereby entitle itself to exemption from taxation on the ground that it is carrying on manufacturing within this state. The things which the relator manufactures are clocks and watches, and unless it produces the whole or some part of the article in this state from the original material, by means of labor, machinery and operatives, such as are usually applied to manufacturing operations, it is not within the exemption. Whatever the facts may be with respect to the manufacturing operations which it is claimed the relator is carrying on in this state, we are concluded on this question by the record. The relator's petition for the writ alleges in substance that since 1878, it has been engaged in manufacturing within this state, though the amount of such manufacturing here is small in comparison with that done in Connecticut. That since 1880, the amount manufactured here averaged in each year from $16,000 to $20,000, while that in Connecticut averaged from $500,000 to $700,000. In the return to the writ, this statement is not denied, though it does state: "That during each of said years the relator was not engaged in carrying on manufacturing within this state, as will more fully and specially appear by reference to the reports of the relator and of the commissioner appointed by the defendant hereto annexed." The reports referred to, however, do show that during each year the relator manufactured within this state from $16,000 to $20,000 in value of goods. The fact that the relator manufactured articles within this state during the years named of the value specified must, therefore, be deemed to be admitted. The only question in issue is one of law, and that is whether the manufacture here of so small a percentage of its total product brings it within the exemption. This question does not depend upon the relation which the value of the goods made here bears to the total value of

the product of the relator's operations.  A foreign corporation of this character might manufacture one-half its whole product here, and yet that might not amount to any more in value than the relator manufactured in this case.  No one would claim, however, in that case that the corporation was not within the exemption.  The rule must be the same whether the corporation is weak or strong, whether its total product is a few thousand dollars or millions.  It may be that, upon a rehearing, the fact which is now admitted may be changed, but unless it is, the relator must be considered as carrying on manufacturing within this state.  But we are of the opinion that the tax imposed was excessive.  The capital stock of the relator was $500,000 in 1888, and since that time $600,000.  This was invested in its plant and business.  Only such part of it was employed within this state as was represented by the actual value of property, whether in money, goods or other tangible things.  It kept goods for sale here.  It had money on deposit, and it may be other property.  This, whatever its value, was the basis of taxation.  (*People ex rel.* v. *Coleman*, 126 N. Y. 433.)

That property represented all the capital employed in this state.  The comptroller adopted another basis.  He ascertained first the total sales made by the relator and then the total sales made in this state and decided that the capital stock employed within this state was in proportion to the whole capital stock as the amount of sales made in this state was to the total amount of sales made everywhere.  In the year 1890 about seventy per cent of the total sales were made in this state, and from this fact the comptroller assumed that seventy per cent of the capital was employed here.  A large part of the sales made were by sample, and the goods in such cases were delivered to the purchaser directly from the factory in Connecticut.  In many cases the goods never came within the state at all.  In other cases they merely passed through to their destination.  Sales made in this way was no part of the capital stock employed within the state and could not constitute any element in the process of ascertaining it.  It might

. sell its whole product by sample from an office in New York to be delivered to the purchaser from the factory, and yet not employ any part of its capital within the state. It might employ an agent in New York to make contracts for the sale and delivery of goods in Europe or in some other state, but these contracts would not represent capital within this state. The value of the goods that it kept on hand within the state in warehouses or otherwise in the transaction of its business and from which it made shipments or sales in the usual way, was property that represented capital stock, and all money on deposit here and used in business here also could be made the basis for the tax, but sales made by sample, followed by a delivery from the factory, could not. If the relator kept no property within the state in any of the years for which the tax was assessed there was no basis for that year upon which to compute the tax. Such property as it keeps here in the transaction of its business, whatever it may consist of, is, we think, the true basis for such computation. The capital stock employed in this state cannot exceed that.

The judgment of the General Term and determination of the comptroller should be reversed with costs, and the comptroller directed to revise and readjust the account against the relator upon the principles herein stated.

All concur, except MAYNARD, J., not sitting.

Order reversed.