The People ex rel. Tiffany & Co., Appellant, *v.* Frank Campbell et al., Respondents.

The provision of the act of 1889 (Chap. 193, Laws of 1889), which amends the provision of the Corporation Tax Act of 1880 (§ 3, chap. 542, Laws of 1880), exempting from taxation "manufacturing corporations carrying on manufacture within this state," by inserting the words "wholly engaged in" before the word "carrying," qualifies the exemption and limits it to corporations whose corporate business is exclusively that of manufacturing.

While a corporation possesses not only the powers specifically granted to it in terms by its charter, but also the powers "necessary to the exercise of the powers so enumerated and given" (1 R. S. 100, § 3), and while this necessity is not an absolute and indispensable one, but includes such incidental powers as are reasonably necessary to enable it to perform its corporate functions, it does not include powers which are merely convenient or useful and not essential to the business.

Said provision, however, as amended, has in view corporations whose corporate powers are confined exclusively to the business of manufacturing; it was not aimed at and does not contemplate the exercise by such a corporation of powers *ultra vires*, and the fact that the corporation is engaged in business outside of its corporate powers does not deprive it of all the benefit of the exemption; it does not cease to be, within the meaning of the act, "wholly engaged" in the business of manufacturing, and while it subjects itself to taxation upon that portion of its capital so illegally used, it is entitled to exemption as to the residue.

Where, therefore, it appeared that a corporation, organized under the General Manufacturing Act for the manufacture and sale of gold and

1894.] People ex rel. Tiffany & Co. *v.* Campbell et al. **167**

N. Y. Rep.]                    Statement of case.

silverware and other articles of ornament and use, and which carried on a manufacturing establishment in the state, and had a store for the sale of its products in the city of New York, employed a portion of its capital in the purchase and sale of goods not manufactured by it, and principally of foreign manufacture, of the same general character as its own manufactures, but of a cheaper quality, which it could not itself advantageously manufacture, and were necessary to complete its stock and meet the wants of customers, and that the portion of the capital so used was mostly permanently invested in London and Paris, *held*, that the corporation had the power to sell its products, but not to purchase and sell goods manufactured by other parties; that it did not, however, by doing this, lose all benefit of the exemption, and was exempt from taxation as a manufacturing corporation; but that a tax was properly imposed upon the portion of its capital so employed in outside and unauthorized transactions.

(Argued November 26, 1894; decided December 11, 1894.)

Appeal from order of the General Term of the Supreme Court in the third judicial department, made July 14, 1894, which dismissed a writ of certiorari to review a decision of the state comptroller holding the relator liable to taxation for a portion of its capital and affirming the decision of the comptroller.

The facts, so far as material, are stated in the opinion.

*Charles E. Miller* and *Norton Chase* for appellant. By the grammatical and natural construction of the act as amended in 1889, the words "wholly engaged in carrying on manufacture or mining ores within this state" qualify and relate only to the word "companies" immediately preceding them. (Smith on Statutes, 655, 656.) If the words "wholly engaged in" refer to corporations, it necessarily follows that the corporations must not only be wholly engaged in manufacturing, but that such manufacturing must be confined to this state. (*People* v. *Davenport*, 91 N. Y. 585.) It was not the object, intent or effect of the amendment of 1889 to subject domestic manufacturing corporations to taxation, in case they carried on within this state business other than that of manufacturing. (*People* v. *Wemple*, 138 N. Y. 1; *People* v. *H. Ins. Co.*, 92 id. 344; *People* v. *A. Ins. Co.*, Id. 458.) It

168 People ex rel. Tiffany & Co. *v.* Campbell et al. [Dec.,

Statement of case. [Vol. 144.

was not the object, intent or effect of the amendment of 1889, to subject domestic manufacturing corporations to taxation in case they employed a part of their capital in other states or countries. (Laws of 1885, chap. 501 ; Laws of 1889, chaps. 193, 352.) Contemporaneous history, the time when, and the circumstances under which, the amendment was enacted, are also to be regarded in construing its effect. (*People* v. *Davenport*, 91 N. Y. 591 ; *People ex rel.* v. *Wemple*, 52 Hun, 434.) In order to determine the intent of the legislature the consequences which different constructions may have upon the operation of a statute are proper matters of consideration. (*People* v. *Campbell*, 74 Hun, 210, 213.) Tiffany & Co., as shown by the evidence of Mr. Cook, carried on manufacturing within this state from 1879 to the present time. (*L. G. Co.* v. *M. G. Co.*, 111 Mass. 315 ; *Brown* v. *Winnisminet Co.*, 11 Allen, 326 ; Green's Brice's Ultra Vires, 94 ; *O. C. R. R.* v. *Evans*, 6 Gray, 25.) The comptroller of the state has no power to settle an account for the tax due the state after the fifteenth day of January in the year when such tax becomes due and payable. (Laws of 1880, chap. 542, §§ 1, 3 ; *People* v. *S. V. Co.*, 92 N. Y. 383 ; Laws of 1856, chap. 180.)

*T. E. Hancock* and *John W. Hogan* for respondents. The act is constitutional. (*People* v. *H. Ins. Co.*, 92 N. Y. 328 ; 134 U. S. 594.) Assuming that the corporation, Tiffany & Co., was included among the corporations liable to taxation under the provisions of the statute, it then was the duty of the corporation to make a report, as required by the law in question, and a failure to do so, as in the present case, authorized the comptroller to fix and determine the tax against the corporation, from an examination of its affairs or such data as he might obtain. (Laws of 1885, chap. 501, § 12.) The tax chargeable to domestic corporations is a franchise and not a property tax. (*People* v. *H. Ins. Co.*, 92 N. Y. 344 ; *People* v. *E. T. Co.*, 96 id. 387.) Tiffany & Co. was not exempt from taxation subsequent to 1888, but was liable to pay a tax in excess of the amount determined by the comptroller.

(Laws of 1881, chap. 361; Laws of 1885, chap. 559; Laws of 1889, chaps. 193, 353; *People* v. *H. S. M. Co.*, 105 N. Y. 76; *Smith* v. *People*, 47 id. 330; *People ex rel.* v. *Davenport*, 91 id. 574; *Cushing* v. *Worrick*, 9 Gray, 382; *In re B. E. R. R. Co.*, 125 N. Y. 444; *In re Olmstead*, 7 Abb. [N. C.] 320.) To argue that the tax imposed by the statute in question was confined to foreign corporations, we submit would result in a conclusion that it was the policy of the state to discriminate against foreign corporations. (*In re Prime*, 130 N. Y. 360.) The fact that Tiffany & Co. paid taxes locally in the city of New York is immaterial. (*People* v. *H. Ins. Co.*, 92 N. Y. 347.) The statute did not authorize the comptroller to adopt as the basis of the tax that percentage of the capital of Tiffany & Co. employed in this state in business other than manufacturing. (Laws of 1889, chap. 463, § 19; *Comm.* v. *S. O. Co.*, 101 Penn. St. 119; *People ex rel.* v. *Wasson*, 69 N. Y. 272; *People ex rel.* v. *Wemple*, 133 id. 617.)

Andrews, Ch. J.   This appeal is from an order of the General Term dismissing a writ of certiorari to review a decision of the state comptroller subjecting to taxation a portion of the relator's capital employed in this state in the years 1889, 1890 and 1891.

The relator is a manufacturing corporation in this state, organized under the general law for the incorporation of manufacturing companies, for the manufacture and sale of gold and silverware and other articles of ornament and use. Its capital, stated in the certificate, is $2,400,000, which by accretion now exceeds $3,000,000. It has a store for the sale of its products in the city of New York. It employs from six to eight hundred men in its manufacturing business in this state and about eighty per cent of its capital. All of this capital, except a portion varying in different years from twelve to fifteen per cent, is invested in its manufacturing business. The portion not employed in that way, amounting on the average to about $300,000 a year, is employed in the purchase and

sale of goods, principally of foreign manufacture, of the same general character as the goods manufactured by the relator, but of a cheaper description, which it cannot itself advantageously manufacture, but which are necessary in order to make its stock complete, and to meet the wants of customers. The portion of the relator's capital not employed in this state, being about twenty per cent thereof, is invested permanently in London and Paris, and a small part in New Jersey.

The question presented relates to the rule of taxation as applied to the relator and the basis upon which the tax is to be computed, assuming that to any extent the capital of the relator is taxable.

The relator insists that, being a manufacturing corporation, it was exempted from taxation by section 3 of chap. 542 of the Laws of 1880, which exempted " manufacturing corporations carrying on manufacture within this state," and the further claim is made in behalf of the relator that the amendment of that section by chap. 193 of the Laws of 1889, which inserted the words " wholly engaged in" before the words " carrying on manufacture," contained in the act of 1880, was not intended to and did not affect or qualify the exemption given by the prior act, and that by that act a manufacturing corporation was absolutely exempt from taxation in whatever other business it might be engaged. The comptroller, in settling the tax, while expressing a doubt whether the relator's business within this state was not wholly that of manufacture within the fair meaning of the act of 1889, nevertheless concluded that it was taxable on the portion of its capital employed in this state in the purchase or sale of goods manufactured by other parties, and upon this basis adjusted the tax. The attorney-general claims that the comptroller erred in limiting the tax to the portion of the relator's capital employed in a business outside of the manufacture and sale of its own products, and that by uniting therewith the business of buying and selling other articles, although of the same general character, was not entitled to any exemption because not " wholly engaged " in carrying on

1894.] People ex rel. Tiffany & Co. *v.* Campbell et al. 171

N. Y. Rep.]    Opinion of the Court, per Andrews, Ch. J.

manufacture within the state, which, it is insisted, is the condition of exemption of manufacturing corporations, imposed by the act of 1889.

We do not assent to the claim of the relator's counsel that the words "wholly engaged in," contained in the amendment of 1889, do not apply to manufacturing corporations. The plain object of the exemption of manufacturing corporations carrying on manufacturing within this state, from taxation, by the act of 1880, was the encouragement of production, and it was assumed that the employment of capital and labor in the business of manufacture here was a just ground for the exemption. The object of the amendment of 1889 was not to withdraw the protection given by the act of 1880, but to define more specifically than in the prior act, the purpose that the exemption should be confined to corporations whose corporate business was exclusively that of manufacture. Under the broad language of our statutes authorizing incorporations and the provisions of special charters, the corporate powers may be extended to embrace many objects dissimilar in character and not germane to each other. It was to avoid a construction which would enable parties to organize a corporation naming manufacture as one of its objects, for the purpose of escaping taxation, while in fact that purpose might be a mere cover for other corporate enterprises embraced in the same certificate, not within the policy of the legislation exempting manufacturing corporations from taxation. The words in the amendment of 1889 were inserted to prevent this evasion of the statute.

It is claimed that the purchase and sale of goods not manufactured by the relator, merely to complete its stock, and limited to articles which it could not advantageously manufacture itself, was incidental and subsidiary to the exercise of its corporate power as a manufacturing company, and, therefore, within the power granted. It is well settled that a corporation possesses not only powers specifically granted in terms, but (as expressed in the Revised Statutes) such powers " as shall be necessary to the exercise of the powers so

enumerated and given." (1 Rev. St. 600, § 3.) The unexpressed and incidental powers possessed by a corporation are not limited to such as are absolutely or indispensably necessary to enable it to exercise the powers specifically granted. Whatever incidental powers are reasonably necessary to enable it to perform its corporate functions are implied from the powers affirmatively granted. (COMSTOCK, J., *Curtis* v. *Leavitt*, 15 N. Y. 64.) But powers merely convenient or useful are not implied if they are not essential, having in view the nature and object of the incorporation. The power assumed by the relator in this case to supply from other sources goods which it could not itself profitably manufacture, was a convenient and useful one, and doubtless contributed to the success of its general business, but it cannot, we think, be said to be essential to its business as a manufacturing corporation. The power to sell its products, even if it had not as in this case been expressly included among the enumerated powers, would be necessarily implied in the charter of a manufacturing corporation. Without the power of sale the business of production could not be carried on. The power to sell is an indispensable adjunct to a manufacturing business. But the same considerations do not apply where a manufacturing corporation is also engaged in the purchase and sale of goods manufactured by other parties. This part of the relator's business was not, we think, within its chartered powers.

The question, therefore, arises whether, by engaging in this business, under the circumstances and for the reasons disclosed by the evidence, the relator, whose main and important business was the manufacture and sale of its own products, lost the benefit of the exemption given by the act of 1889, to manufacturing corporations within this state, " wholly engaged in carrying on manufacture." The corporate business of the relator was the manufacture of goods and the sale of its manufactured products. This is the clear construction of its certificate. It employed a small portion of its capital in doing a business not strictly authorized by its charter, viz., the buying and selling of goods manufactured by other persons. The

state could have intervened to prevent this usurpation of power, if, in the opinion of the authorities, the public interests required it. The statute of 1889, in exempting from taxation manufacturing corporations " wholly engaged in carrying on manufacture " within this state, had in view corporations whose corporate powers were confined to the exclusive business of manufacturing, and the limiting words were intended to distinguish between such corporations and corporations which embraced a wider scope of power, but which included the power to engage in the business of manufacture. These latter corporations were not exempted, unless, indeed, their actual business was confined to the exercise of this specific power. The statute was not aimed at and did not contemplate the exercise by a corporation of powers *ultra vires.* If a manufacturing corporation is engaged in business outside of its corporate powers, in connection with its manufacturing business, it' does not cease to be " wholly engaged " in the business of manufacture ; that is to say, its only legal and authorized business was that of manufacture. It subjected itself to taxation upon that portion of its capital so used, but nevertheless it remained a corporation which, so far as it exercised its legal powers, was " wholly engaged " in manufacture, and, therefore, entitled to exemption as to its manufacturing business.

The conclusion reached by the comptroller worked exact justice. It exempted the relator as a manufacturing corporation from taxation. It imposed a tax on its capital employed in outside and unauthorized transactions. The relator cannot be heard to complain of taxation to this extent, or that it was not capital taxable under the law of 1889. The apportionment of a tax under circumstances, in many respects, similar to this has been sustained by the courts of Pennsylvania. (*Com.* v. *Lackawanna Co.*, 129 Pa. St. 346 ; *Com.* v. *Wm. Mann Co.*, 150 id. 64.) The case is not free from difficulty. But it is to be borne in mind that very few corporations would be entitled to exemption.if the exemption was lost by proof that the corporation had done some business not within

its corporate powers.    The rule we adopt maintains the policy of the statute, while it subjects all the property of the corporation, outside of its legitimate business, to taxation.

The order below should be affirmed.

All concur, except BARTLETT, J., not voting.

Order affirmed.