(25 App. Div. 16.)

## PEOPLE ex rel. NEW ENGLAND LOAN & TRUST CO. v. ROBERTS, Comptroller.

(Supreme Court, Appellate Division, Third Department.   January 5, 1898.)

1. FOREIGN CORPORATIONS—FRANCHISE TAX—CAPITAL STOCK.

The securities of a foreign corporation, whose business consists in loaning its capital on real estate, and which has an office in the state where its president and secretary reside, and to which office are sent for sale undisposed-of securities taken in other states, the proceeds of such sales being deposited in a bank, and subsequently returned to the offices in these states for reinvestment, are subject to a franchise tax, under Laws 1896, c. 908, § 182, as the money received on a sale of these securities is part of the capital stock.

2. SAME—HOW DETERMINED.

The capital of a foreign corporation "employed within the state" is represented by the actual value of its property within the state, whether in money or goods or other tangible things, less the amount which, in a proper case, may be deemed to be income or profits.

3. SAME.

In arriving at the amount of the capital stock of a corporation employed within the state, it is proper to consider the average amount of securities held and used in the state, the bank account, and the amounts paid for salaries and rentals, less what may be properly deemed to be income.

Certiorari by the people, on the relation of the New England Loan & Trust Company, against James A. Roberts, as comptroller of the state, to review a determination imposing a franchise tax upon the relator.    Determination confirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Coudert Bros., for relator.

T. E. Hancock and G. A. B. Hasbrouck, for defendant.

MERWIN, J.    The relator is an Iowa corporation, organized under the laws of that state in September, 1882, having a capital of $840,-000.    Its business consists in the loaning of money on bond and mortgage in several of the Western states, and selling the bonds themselves or debentures based thereon.    It began business in this state in September, 1886.    It has an office and place of business in the city of New York, and its president and treasurer are located there, and it has a license for the transaction of the business of investments from the banking department of this state.    The home office is at Des Moines, Iowa, and there the two vice presidents of the company and the general counsel are located.    It has also an office at Kansas City, Mo., and one at Dallas, Tex.    It lends the capital of the company on real-estate mortgages in Iowa, Missouri, and Texas.    Bonds accompany the mortgages.    These bonds and mortgages are sometimes sold at those offices.    What are not sold there are sent to the New York office for sale.    The proceeds of sales at the New York office are deposited in the bank in New York, and subsequently sent to the home office or lending office for lending again on mortgages.    The average amount held in New York for sale during the year in question was $204,000.    The amount of sales to actual residents of New York was $177,400.    Out of the amount kept on hand, sales were

made from time to time outside of the state of New York, some being sold abroad, some in Vermont, and some in Connecticut. The total sold was $1,149,915. The average of the bank account in New York during the year was $35,346.76. The total paid for salaries and services in this state was $26,397, and for office rental $2,800. The value of the office furniture was $1,500.

It is clear that the relator is doing business within this state. It is, however, contended upon its behalf that no part of its capital is employed by it within this state, and that, therefore, there is no basis for the tax. Laws 1896, c. 908, § 182. The argument is that, although the securities are here, the moneys or the debts represented by the securities must be deemed to be located at the residence or location of the corporation in Iowa. The securities were used here, and presumptively transferred here to the different purchasers. The capital of the corporation was dealt with here, and was actually here when, by sales of the securities, the money was realized and deposited here. In that way the capital was handled here to an amount several times greater than the average amount of securities kept on hand. In the course of this business the stock of securities was being sold and replenished. The securities, for the purposes of the transactions of the company, were its goods. The sales were made and consummated on transfer of the securities as effectually as if the articles sold were chattels. In People v. Campbell, 138 N. Y. 543–547, 34 N. E. 370, it was said of bonds of a foreign corporation held by a domestic corporation, that such bonds, as well as all choses in action, unless kept, employed, or used outside of the state, have their situs at the domicile of the owner. The inference, as claimed here by the defendant, is that if the bonds are kept, employed, or used, as here, outside of the state of the domicile of the owner, the situs is at the place where they are kept or used. The same inference is made from what was said in People v. Campbell, 88 Hun, 544, 34 N. Y. Supp. 801.

It is claimed on the part of the relator that the cases of People v. Commissioner of Taxes, 23 N. Y. 242, and People ex rel. Bank of Montreal v. Commissioners of Taxes, 59 N. Y. 40, are in principle applicable here in favor of the contention of the relator. These cases related to general taxation. By chapter 37 of the Laws of 1855, it was provided that nonresidents, doing business in this state as merchants or otherwise, should be assessed and taxed on all sums invested in any manner in such business, the same as if they were residents. The Parker Mills was a foreign corporation, and had a depot and agent in New York City to whom it sent goods for sale. Its only business within the state consisted in making such sales, the proceeds of which were remitted at once to the corporation. The defendants assessed the relator the amount of the value of the goods which the agent had in store when the assessment was made. It was held that the assessment was improper, it being said that the act of 1855 was designed to reach the capital of nonresidents employed within the state in a continuous business, and not property sent here only as to a market for sale; the case being likened in principle to the case of goods sent to agents for sale on commission for the benefit of the owner, and exempt from taxation under chapter 176 of the Laws of 1851. In

the Bank of Montreal Case, the bank had an agency permanently established in the city of New York, to which it transmitted its surplus funds, to be employed in temporary loans, subject at all times to its control and drafts. It was held that the bank was exempt under the provisions of the act of 1851 exempting from taxation foreign capital transmitted to agents here for the purposes of investment or otherwise, and that the act of 1855 did not apply. These cases are not, I think, controlling here. There is no question here of exemption, but the question is whether, within the meaning of the acts imposing a franchise tax as for the privilege of doing here a conceded business, there was an employment here of the capital of the relator or of some portion thereof. The case of People v. Roberts, 154 N. Y. 1, 47 N. E. 974, is not applicable here. There the whole business of the relator within this state consisted of the distribution of its income or dividends.

It seems to me to be reasonably clear that a considerable portion of the capital of the relator was employed in this state, within the meaning of the statute. That being so, it only remains to apply the rule for ascertaining the amount, which has been quite definitely laid down by the court of appeals, that the capital of a foreign corporation employed within the state is represented by the actual value of its property within this state, whether in money or goods or other tangible things (People ex rel. Seth Thomas Clock Co. v. Wemple, 133 N. Y. 323, 31 N. E. 238; People ex rel. Singer Mfg. Co. v. Wemple, 150 N. Y. 51, 44 N. E. 787), less, very likely, the amount which, in a proper case, may be deemed to be income or profits. In the application of this rule there is no illegal interference with interstate commerce. Cable Co. v. Adams, 155 U. S. 696, 15 Sup. Ct. 268, 360; Pullman Car Co. v. Pennsylvania, 141 U. S. 18, 23, 11 Sup. Ct. 876; People v. Wemple, 138 N. Y. 1, 33 N. E. 720.

In arriving at the amount, the average amount of securities held and used in this state may, I think, be considered, as well as the bank account (Seth Thomas Clock Co. Case, 133 N. Y. 328, 31 N. E. 238); and I see no good reason why the amount paid out for the salaries and for rentals, less what may be properly deemed to be income, may not also be taken into account. The amount upon which the comptroller based the tax was the sum of $245,000. No particular point seems to be made as to the amount of tax, assuming that capital of the relator was employed within this state, within the meaning of the act.

It follows that the determination of the comptroller should be confirmed. All concur. Determination of the comptroller confirmed, with costs.