(57 App. Div. 335.)

### PEOPLE ex rel. BROOKLYN RAPID–TRANSIT CO. v. MORGAN, Comptroller.

(Supreme Court, Appellate Division, Third Department. January 9, 1901.)

TAXATION—FRANCHISE TAX—MODE OF COMPUTATION.

 Under Franchise Tax Law, § 182, requiring a tax on the business of a corporation to be levied at the rate of 1½ mills on each dollar of the appraised capital within the state in case the dividends do not amount to 6 per cent., but, if they do, requiring the dividends of the preceding year to be taken as a basis, the average capital employed for the preceding year is to be taken as the basis where the dividends do not equal 6 per cent., and not the highest sum employed at any one time.

Certiorari by the people, on the relation of the Brooklyn Rapid-Transit Company, against William J. Morgan, as comptroller of the state of New York, to review the comptroller's assessment of the state franchise tax of relator. Sustained.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, MERWIN, and SMITH, JJ.

Sheehan & Collin (John L. Wells, of counsel), for relator.

John C. Davies, Atty. Gen. (Robert E. Steele, Dep. Atty. Gen., of counsel), for respondent.

KELLOGG, J. This review involves the construction of some portions of the law relating to franchise tax on corporations not heretofore passed upon by the courts. The relator at the commencement of the tax year, November 1, 1898, had an employed capital in this state of $20,000,000. This continued until February 15, 1899, when the amount of its employed capital in this state increased to $29,500,000, at which sum it continued thereafter to March 27, 1899, when it was further increased to $37,663,650. The amount of capital so employed continued at this sum until April 6, 1899, when it was again increased to $38,770,000, and continued at that sum until May 2, 1899, when it was further increased to $41,483,900. At this sum it remained until May 5, 1899, when it was increased to $43,000,000; and from May 5, 1899, to October 31, 1899, the end of the tax year, this was the amount employed in this state by the relator. The relator paid no dividend during the year next preceding November 1, 1899. And section 182 of the tax law required that a tax should be levied "at the rate of one and one-half mills upon each dollar of the appraised capital employed within the state." The comptroller appraised the capital employed at 99⅔ per cent. of the par value of the stock, and obtained this percentage by taking a monthly average of the market value of the stock during all of the year preceding November 1, 1899. This method of appraisal is not objected to, and seems to be a reasonable and proper mode of reaching the actual value of each dollar of capital employed.

The comptroller, however, to reach the total value of capital employed during the year, took, as a basis the highest sum employed at any one time, viz. $43,000,000, and multiplied this by 99⅝ per centum, the value of each dollar during the 12 preceding months, and so fixed the amount of capital employed during the preceding year at $42,-728,250. The relator contends that this is too large; that the utmost sum upon which the tax should be levied is the average capital employed during the year, and that such average is readily ascertained from the data in the possession of the comptroller; that the amount of capital employed during any period of days, multiplied by the number of days, and the products so ascertained being added together and divided by the number of days in the year, would give accurately the average sum throughout each day of the year, and would accurately express the volume of annual business done by the relator. This is undoubtedly so. This is not a tax upon property, but a tax upon a business done. It is an annual tax, to be measured by an annual business done, or, in other words, by the appraised value of capital employed during an entire year. The capital must have been employed, or else there is no tax. It must have been employed within the state. All the data going to fix the amount of the tax must be past transactions. Time of employment and amount employed are essential data to fix the amount of an annual tax upon a business with any degree of fairness, and I think the legislature, in framing this franchise tax law, had this in mind. There is not any language in the act which points to any other construction. The gross injustice of any other view would force the conclusion that the legislature did not intend to deal fairly. In the first place, section 182 of the tax law, which alone is authority for this species of tax, makes the dividends paid during the entire preceding year the basis of the annual tax, in case such dividends aggregate 6 per cent. or upwards. This is to be the measure of the volume of business done, and 12 months is the time limit. The frequent use of the term "during the year" distinctly regards the whole year as being an important factor in measuring the business done or capital employed upon which a tax is laid. Suppose the relator had for the month of November, 1898, employed $43,000,000, doing business in the state, and for the remaining 11 months had employed its entire capital outside of the state; would the relator be required to pay a tax based upon its entire capital for a whole year? It is not for the privilege to do business that the tax is imposed,—the organization tax takes care of that,—but for the business actually done, and after it is done and can be ascertained and measured, that this tax lights upon. Nor is it for the privilege of doing business in the future. That, also, is provided for by the organization tax. It is for no privilege at all. The certificate of incorporation affords the privilege, and all the privilege, permitted or desired to do business in this state. Nor is this idea, which clearly runs through every sentence of the act, in any way affected by the fact that the money so raised may be used by the state to defray the expenses of government for the coming year. If the relator does no business in the state during the coming year, it will pay no tax. If it does business, it will pay for what it does. By paying the tax this

year, it gains no right to do a business free of tax next year. So it is not for the right to do business next year that this tax is levied or paid. It is for the right already enjoyed. This tax, by the wording of the statute, is to be annual. The relator must pay annually. That means that, if it does business in this state for 20 years, it must pay 20 annual taxes. Suppose it began business in October; the first tax would be levied in November following, and the last tax to be levied would be, under this law, in November, after the expiration of the 20 years. The last tax must be for the business done or capital employed for the year preceding, and, although the relator went out of business in October, it could not escape the tax for that year. For 20 years of business it is clear the relator would then have paid 21 years of full taxes; that is, if the comptroller is right in his mode of assessment,—the mode he has adopted in this case. This, I think, is clearly wrong. The theory that the tax is for business done in the past, and only for that, and to be measured on the basis of 12 months duration, works no hardship to the relator and those similarly situated, and does full justice to the state and to the intention of the legislature. In this way a full tax is paid upon the actual business done, whether for the full year or for a shorter time; and there is no escape from paying for all that is done, and no room to exact pay for any time when capital is not employed, and that seems to be all that the law requires.

The case cited by the learned attorney general in support of the theory that the tax is imposed for the future enjoyment of the franchise (People v. Albany Ins. Co., 92 N. Y. 458) declares no such doctrine. The expression by the court relied upon as supporting such a theory has no such meaning, nor was such meaning intended. The question before the court was whether a division of $100,000 of a surplus earned and accumulated before the act took effect, but divided among stockholders after the act took effect, was to be considered to be a dividend, and taxable at the rate fixed by the law. The court said it was not, and used the expression which seems to have misled the comptroller, viz.:

"These acts are prospective in their operation, and the tax thereby imposed is payable annually, not for the past, but for the future, enjoyment of the franchise."

That is to say, the act looked forward, and not backward; that it did not seek to fasten upon the past earnings of the relator, but only upon the future earnings,—earnings made and dividends declared therefrom after the act was passed; enjoyment of the franchise after the passage of the act, and not enjoyment before its passage, was what the act contemplated. The case last cited (People v. Albany Ins. Co.) and People v. Spring Val. Hydraulic Gold Co., 92 N. Y. 383, were both controlled by chapter 542 of the Laws of 1880, which was in its wording essentially different from the wording of section 182 of the present tax law. The capital stock of this company was the thing assessed by the law of 1880, while by the present tax law "the capital employed within the state" during the preceding year is the subject of taxation. In the one case the subject was fixed arbitrarily and could not be departed from. In the other it was to be

determined on the basis of the actual employment of capital during the preceding year.

The foreign corporations doing business in this state and the domestic corporations are on the same footing, as to liability to pay this tax. There is no distinction in the law as to the manner of treatment. The delay of 13 months in which to pay the license fee has nothing to do with the liability of a foreign corporation to be assessed on November 1st for business done or capital employed during the year preceding, although it may have been less than a year doing business, but the basis of assessment is the same. The proper basis is the volume of business done, spread out over 12 months; and this is easily determined by average, in case the time is short of 12 months. That the proper method of reaching the amount of capital employed is by average is not only supported by sound common sense, but by authority. People v. Campbell, 144 N. Y. 166, 38 N. E. 990; Same v. Roberts, 25 App. Div. 16, 49 N. Y. Supp. 10, affirmed in 156 N. Y. 688, 50 N. E. 1120.

In the matter before us there are no disputed facts. All the data needed to make the assessment are in the return, and the data has been stated. It is only a matter of mathematical computation to fix the amount of tax which the relator should pay. The average capital employed by the relator in this state for the year next preceding November 1, 1899, is admitted in the return to have been $35,217,672. This multiplied by 99⅔ gives $34,997,561, the actual capital employed during the year, on which a tax of 1½ mills is to be levied, amounting to $53,499.34; and the account of the relator should be corrected and restated by the comptroller to correspond therewith.

The determination of the comptroller modified as follows: The sum of $34,-997,561 is fixed as the capital employed within the state during the year, and the tax thereon is fixed at $53,499.34, with $50 costs and disbursements to relator. Order to be settled by KELLOGG, J. All concur.