THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE MUTUAL TRUST COMPANY OF WESTCHESTER COUNTY, Appellant, v. NATHAN L. MILLER, as Comptroller of the State of New York, Respondent.

TAX — WHEN TRUST COMPANY HAS CARRIED ON BUSINESS FOR LESS THAN FISCAL OR TAX YEAR, A TAX IMPOSED UPON THE PRIVILEGE OF EXERCISING ITS FRANCHISE MUST BE APPORTIONED ACCORDINGLY. The tax imposed by section 187a of the Tax Law (L. 1901, chs. 132, 535), providing that "Every trust company incorporated, organized or formed under, by or pursuant to a law of this State, * * * shall pay to the State annually for the privilege of exercising its corporate franchise or carrying on its business in such corporate or organized capacity, an annual tax which shall be equal to one per centum of the amount of its capital stock, surplus and undivided profits * * *," is a tax ·imposed upon a privilege, not upon property. It is not imposed upon the privilege of becoming a corporation, for that would be an organization tax, payable but once for the entire period of corporate existence. It is imposed "for the privilege of exercising" the corporate franchise, and is measured by the value of the investment made and used in carrying on the corporate business. It is an "annual" tax, imposed "annually," as the statute expressly provides, for the purpose of exercising, not of possessing, a.corporate franchise. An "annual" tax imposed "annually" means a tax that is imposed once a year, computed by the year. While the statute does not expressly provide for an apportionment of the tax in the case of a trust company engaged in business for a fraction of a year, it is a fair and reasonable implication, from the words used, that such was the intention of the legislature. When a trust company, therefore, does not commence business until six days before the expiration of the fiscal or tax year, the tax should be appor-

tioned according to the period during which the company exercised its corporate franchise; and where the comptroller has imposed the tax for the whole of the fiscal or tax year the company is entitled, upon a certiorari to review his determination, to an order remitting the matter to him for adjustment in accordance with the rule laid down.

*People ex rel. Mutual Trust Co.* v. *Miller,* 85 App. Div. 211, reversed.

(Argued November 9, 1903; decided December 18, 1903.) ·

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered August 5, 1903, which confirmed a determination of the defendant in refusing to revise a tax assessed against the relator for the year ending June 30, 1901.

The facts, so far as material, are stated in the opinion.

*Herbert Parsons* for appellant. If the trust company was assessable at all, it was only assessable on its capital stock and surplus spread out over twelve months; that is, on $\frac{6}{365}$ of $360,000, and the tax would be $\frac{6}{365}$ of $3,600, or $59.18. (*People ex rel.* v. *Morgan,* 168 N. Y. 672; 51 App. Div. 335; *People ex rel.* v. *Morgan,* 47 App. Div. 126; *People ex rel.* v. *Knight,* 173 N. Y. 255; *People ex rel.* v. *Campbell,* 144 N. Y. 166; *People ex rel.* v. *Roberts,* 25 App. Div. 16; *People ex rel.* v. *Miller,* 85 App. Div. 178.)

*John Cunneen, Attorney-General .(William H. Wood* of counsel), for respondent. The tax imposed by section 187a is a tax upon the franchise to be a corporation. It is to be paid annually, and in fixing it the comptroller is not authorized to take into account fractional parts of a year. If the corporation is in existence during the year, it must pay the tax. (*People* v. *S. V. H. G. Co.,* 92 N. Y. 383; *People* v. *N. Y. F. D. D. Co.,* 92 N. Y. 487.)

VANN, J. The relator, a trust company with the powers which its name implies, was organized on the 6th of June, 1901, and began to do business on the 24th of that month. Its capital was $300,000, its surplus, paid in with the capital, was $60,000, and it had no undivided profits when the question presented by this appeal arose. On the 30th of

August, 1901, the comptroller imposed a tax of $3,600 upon its capital and surplus amounting to $360,000, which he declared was " for tax on franchise or business based on capital stock, surplus and undivided profits, per chap. 132, Laws 1901, as amended by chap. 535, Laws 1901, for year ending June 30th, 1901." The relator, after paying the tax under protest, applied to the comptroller for a revision and readjustment, but the application was denied. A writ of certiorari, issued for a review of such determination, resulted in an order of the Appellate Division confirming it in all respects. From that order the relator appealed to this court.

The statute under which the comptroller proceeded provides that " Every trust company incorporated, organized or formed under, by or pursuant to a law of this state, * * * shall pay to the state annually for the privilege of exercising its corporate franchise or carrying on its business in such corporate or organized capacity, an annual tax which shall be equal to one per centum on the amount of its capital stock, surplus, and undivided profits. * * * " (Tax Law, § 187a, L. 1901, chaps. 132 and 535.)

Every company liable to pay a tax under this section is required to make a written report to the comptroller on or before August first in each year, " of its condition at the close of business on June thirtieth preceding, separately stating the amount of its capital stock, the amount of its surplus, and the amount of its undivided profits, and containing such other data, information or matter as the comptroller may require." Upon the basis of this report, or if no report is made, or the one made is unsatisfactory, upon the facts discovered by the comptroller through an examination which the statute authorizes, it his duty to " order and state an account for the tax due the state," and to notify the corporation interested, which is required to pay the tax thus fixed on or before the first of September in each year, with a penalty of five per cent for non-payment within thirty days after it becomes due and one per cent for each month thereafter.

At any time within one year after notice of the imposition

·of the tax, the comptroller may revise his action, correct any ·error, and, if the tax has been paid, make the proper adjustment. The action of the comptroller may be reviewed by ·certiorari, provided the amount of the tax is first deposited with the treasurer of the state. (Id. §§ 195–197.)

The relator claims, among other things, that as it had carried on business but six days before the fiscal year expired, the tax should be apportioned according to the period during which it exercised its corporate franchise. The comptroller claims that a fraction of the year cannot be considered in imposing the tax, and that the exercise by the relator of its ·corporate franchise for any part of the year subjects it to a tax the same in amount as if it had been engaged in business during the entire year.

The tax under consideration is not imposed upon property, but upon a privilege. It is not imposed upon the privilege of becoming a corporation, for that would be an organization tax, payable but once for the entire period of corporate existence. It is imposed " for the privilege of exercising " the corporate franchise, and is measured by the value of the investment made and used in carrying on the corporate business. It is an " annual " tax, imposed " annually," as the statute expressly provides, for the privilege of exercising, not of possessing, a ·corporate franchise. This privilege was used by the relator for only six days during the fiscal year in question. It could not exercise its franchise for the entire year, because the state ·did not bring it into existence until the year had nearly ·expired. The consideration for the tax is the privilege of ·carrying on business, yet the relator, according to the requirement of the comptroller, was compelled to pay for a privilege that it did not have and could not exercise during ·the greater part of the period for which the tax was laid. It used the privilege for only six days, but it is taxed for using it 365 days, during 359 of which it did no business and enjoyed ·no privilege. An annual tax is a tax reckoned by the year the same as annual rent or annual interest. An " annual " tax imposed " annually," means a tax that is imposed once a year,

computed by the year. If a trust company does not commence business until six days before the fiscal year ends, or if it ceases to do business six days after the year begins, the tax for doing business by the year requires apportionment. While the legislature did not so provide in express terms, it is a fair and reasonable implication from the words used that such was its intention. When by section 182 of the Tax Law it imposed an annual tax payable annually upon every corporation of a certain class, to be computed upon the basis of the amount of its capital stock "employed within the state" during the year, it did not say expressly that the assessment should be determined by the *average* amount of capital so employed, but we held that this was what was necessarily meant. (*People ex rel. Brooklyn Rapid Transit Co.* v. *Morgan*, 57 App. Div. 335; 168 N. Y. 672.) Adopting the opinion below, we said: "This is not a tax upon property, but a tax upon the business done. It is an annual tax to be measured by an annual business done, or, in other words, by the appraised value of capital employed during an entire year. The capital must have been employed or else there is no tax. It must have been employed within the state. All the data going to fix the amount of the tax must be past transactions. Time of employment and amount employed are essential data to fix the amount of an annual tax upon a business with any degree of fairness, * * *."

Section 187a does not fix the date when the capital stock, surplus and undivided profits shall be taken, although they are variable quantities of which an average can be made for the year the same as an average of the capital stock employed by the year was used in the case of the *Brooklyn Rapid Transit Company* and with as much reason. In pronouncing judgment in that case we relied in part upon *People ex rel. Tiffany & Co.* v. *Campbell* (144 N. Y. 166) and *People ex rel. New England Loan & Trust Co.* v. *Roberts* (25 App. Div. 16; 156 N. Y. 688), and we distinguished *People* v. *Spring Valley Hydraulic Gold Co.* (92 N. Y. 383), the main reliance of the learned attorney-general in the case in hand. In the latter

case, as an examination of the record shows, the question of apportionment was raised neither by the pleadings nor at the trial, but was suggested for the first time in this court which did not consider it and could not consider it because it was raised by no exception. That appeal was heard upon the judgment roll only, none of the evidence having been returned. The only exceptions were to the conclusions of law as found by the trial judge and they did not suggest the question. Moreover, the statute in that case differed in many important particulars from the one now before us, although the words "annual" and "annually" appeared therein. The question there was not as to the amount of the tax, but as to the constitutionality of the act and whether the company was liable for any tax whatever. Here the question of apportionment was distinctly raised in the petition for the writ as well as, but less distinctly, before the comptroller. It is the only debatable question in the case and the only one considered by the Appellate Division. The meaning of a statute imposing a new kind of tax is seldom settled by one adjudication, but there is a gradual growth as new questions occur to counsel in its progress through the courts, and authorities under one statute frequently fail in analogy to cases under another statute relating to a similar subject, but differing in many essential respects. We do not consider the decision in the case relied upon by the respondent as controlling in this.

Statutes should receive a reasonable construction unless the language used prevents it. Here we have an act which does not expressly provide for the case before us. It imposes annually an annual tax for doing business, but does not say whether, if business is done for only part of a year, the tax shall be fixed in accordance with the time business is done, or for the entire year, including that part when not only no business was done, but there was no right to do any. It would be unreasonable to hold that a tax on doing business covers the whole year, when business was done for only six days. A tax is presumed to be laid by the state in return for some proportionate value received by the taxpayer, and the legislature, in

imposing an annual tax for the privilege of doing business, intended, as we think, that it should be based upon the period that the privilege was extended and enjoyed.

We may assume that the question is not free from doubt, for we cannot unite in judgment upon it, but serious doubt in a case of taxation should be resolved in favor of the taxpayer. (*Matter of Harbeck*, 161 N. Y. 211, 217; *Matter of Fayerweather*, 143 N. Y. 114, 119; *Powell* v. *Tuttle*, 3 N. Y. 396, 401.) A statute which levies a tax is to be construed most strongly against the government and in favor of the citizen. The government takes nothing except what is given by the clear import of the words used, and a well-founded doubt as to the meaning of the act defeats the tax. (Sutherland on Statutory Construction, 458; Black's Interpretation of Laws, 326; Cooley on Taxation, 200.)

We think the construction adopted is fair to the government and just to the citizen, for it gives the former full payment for the time the franchise was exercised and takes from the latter nothing but what it impliedly agreed to pay when it accepted the franchise. We, therefore, reverse the order of the Appellate Division and the determination of the comptroller, with costs, and remit the matter to the comptroller for adjustment in accordance with the rule laid down.

BARTLETT, J., (dissenting). The relator trust company received from the superintendent of banks a certificate of authorization to do business on the 6th day of June, 1901, and did actually commence the transaction of business on the 24th day of June, 1901. It had, therefore, been in business six days when its condition determined the amount of tax. No report was made August 1, 1901, and on the 30th day of that month the comptroller imposed the assessment and tax now under review.

The counsel for the relator insisted at our bar and in the courts below that the company was not liable to any tax for the year 1901, and that its first report to the comptroller was not due until August 1, 1902.

It was also argued that if the company was assessable at all,

it was only on its capital stock and surplus spread over twelve months; that is on 6/365ths of $360,000, and the tax would be 6/365ths of $3,600.00, or $59.18.

It is conceded that the legislature did not provide in express terms for the apportionment that is now to be allowed by the decision of this court, but that it may be reasonably implied when seeking for its intention.

When taxes are imposed upon corporations to be computed upon the basis of the capital employed by it within the state, and the amount of that capital varies from time to time during the fiscal year, apportionment is of course necessary. (Tax Law, § 190.)   In the imposition of a franchise tax no such situation is presented.

Section 187a, under which this tax is assessed, expressly states that it is for the privilege of exercising a corporate franchise or carrying on the business of the corporation. This tax is imposed upon the amount of the capital stock without regard to its actual value. It may be quoted at two or three times its par value, and yet the tax is assessed only upon the amount of the capital stock. (Tax Law, § 187a.)

In considering this new form of taxation affecting trust companies, we are to keep in mind that it is accompanied by several valuable concessions to them. Section 202 of the Tax Law, as amended by chapter 132, Laws of 1901, and chapter 172, Laws of 1902, provides that a trust company is not only released from taxation on its personal property for state purposes, but is exempt from assessment and taxation for all purposes. In addition to this is the provision that the holder of stock of a trust company is not liable to be taxed thereon.

In view of the nature of the tax and these valuable concessions, I am of opinion that the section under construction should be enforced as it stands and that there is no occasion to read into it the supposed intention of the legislature.

I vote for affirmance.

Parker, Ch. J., O'Brien, Haight, Cullen and Werner, JJ., concur with Vann, J.; Bartlett, J., reads dissenting opinion.

Order reversed, etc.