THE PEOPLE OF THE STATE OF NEW YORK ex rel. VERNON METAL AND PRODUCE COMPANY, INC., Relator, *v.* WALTER W. LAW, JR., and Others, as and Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, January 9, 1924.

Taxation — franchise tax — effect of amendment of Tax Law, § 208, by Laws of 1918, chap. 417, omitting definition of mercantile corporation — mercantile corporation defined — relator, engaged as intermediary between buyers and sellers, is not mercantile corporation within Tax Law, § 209, and is not subject to franchise tax — doubts as to construction of taxing statute must be construed in favor of taxpayer.

The effect of the amendment of section 208 of the Tax Law by chapter 417 of the Laws of 1918, omitting the definition of a mercantile corporation, is that those corporations only can now be classed as mercantile corporations which, beyond a well-founded doubt, would be classified as such within the term as commonly understood and defined.

A mercantile corporation, within the meaning of section 209 of the Tax Law, is a corporation engaged in buying to sell again and which does both, not occasionally or incidentally, but habitually and as a business.

The relator, whose sole business was that of acting as intermediary between buyers and sellers of goods and which did not buy or sell any goods on its own behalf, is not a mercantile corporation subject to a franchise tax.

Where there is any doubt as to the construction of a taxing statute that doubt must be resolved in favor of the taxpayer.

CERTIORARI issued out of the Supreme Court (after the taking effect of the Civil Practice Act)* and attested on the 13th day of

* See Civ. Prac. Act, § 1283, as amd. by Laws of 1922, chap. 355.— [REP.

January, 1923, directed to Walter W. Law, Jr., and others, as and constituting the State Tax Commission of the State of New York, commanding them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings had in assessing a tax against the relator for the tax year beginning the 1st day of November, 1918, under article 9-A of the Tax Law.

*Kurzman & Frank* [*Sidney Newborg* of counsel], for the relator.

*Carl Sherman, Attorney-General* [*C. T. Dawes* of counsel], for the respondents.

HINMAN, J.:

The sole issue involved is whether the relator was a mercantile corporation and taxable as such under article 9-A of the Tax Law,* as amended in 1918. Relator was merely a broker in metals, spices and rubber. Its only business was to negotiate purchases and sales for others. It received instructions from clients who had merchandise for sale, to find buyers for this merchandise and *vice versa.* Ninety-five per cent of its business was transacted over the telephone by two of the officers of the relator. It acted merely as an intermediary between prospective buyers and sellers and the principals bought and sold as between themselves. The relator did not buy or sell anything on its own account. It did not pay for or receive shipments of merchandise. It never undertook delivery of any goods for sale. The goods would go direct to the buyers and would be paid for by the buyers. In effect the relator sold its services to buyers and sellers for a commission. As the law stood in 1917, the relator was clearly taxable. Section 208, article 9-A, of the Tax Law then defined " mercantile corporation " to mean " a corporation principally engaged in the business of buying or selling tangible personal property for itself or for others." The next year (1918) section 208 was amended by dropping out the definitions of " mercantile corporation " and " manufacturing corporation." (Laws of 1918, chap. 417.) Section 209, however, which was amended by chapter 276 of the Laws of 1918, continued to provide for a franchise tax on " every domestic mercantile corporation." By taking out the statutory definition the Legislature must be deemed to have intended to tax those corporations which, beyond " a well-founded doubt," would be classified as mercantile corporations, as that term is commonly understood and defined. (*People ex rel. Mutual Trust Co. v. Miller,* 177 N. Y. 51, 57.)

In the case of *People ex rel. Hodkinson Corp. v. Cantor* (119

*Added by Laws of 1917, chap. 726.— [REP.

Misc. Rep. 604, 606) GIEGERICH, J., speaking generally of what was a mercantile corporation within the meaning of article 9-A of the Tax Law, said: "The word 'mercantile' in its ordinary acceptation *pertains to the business of merchants* and has to do with trade, or the buying or selling of commodities (5 Words & Phrases, 4477–4482; *Matter of Cameron Town Mut. Fire, Lightning & W. Ins. Co.*, 96 Fed. Rep. 756) and a mercantile corporation is one which buys and sells goods and merchandise or *deals in the purchase and sale of commodities,* and that, too, not occasionally or incidentally but as a business." The Attorney-General, relying upon the expressions italicized in the above definition, contends that the relator is a mercantile corporation because it " deals in the purchase and sale of commodities," and its activity " pertains to the business of merchants."

A similar argument was presented to the United States Circuit Court of Appeals, Third Circuit, in the case of *Zugalla* v. *Mercantile Agency* (16 Am. Bank. Rep. 67, 70) with reference to whether a mercantile agency was engaged in " mercantile pursuits " within the meaning of subdivision b of section 4 of the Bankruptcy Act.* That court held such an agency not engaged in a mercantile pursuit, saying: " The special master quotes the Century Dictionary's definition of 'mercantile,' as ' having to do with trade or commerce,' and then says: ' Mercantile agencies have grown to be an indispensable adjunct of trade and commerce, and appertain particularly to the ordinary business of merchants.' This is, indeed, a forced construction, which, if adopted, would lead to much confusion in the administration of the bankrupt law. ' Mercantile ' is an adjective, and one of its shades of meaning may be the one quoted, but, when qualifying or defining the business of a person, natural or artificial, it connotes the buying and selling of commodities. Such is the basic definition of the dictionaries, as well as its meaning in common speech."

In another bankruptcy case (*Matter of Leighton & Co.*, 17 Am. Bank. Rep. 275) it was held that a company incorporated for the purpose of carrying on a general stock, bond, grain and brokerage business and promoting financial enterprises, etc., was subject to adjudication as a bankrupt because as a matter of fact it was found to be engaged principally in " trading and mercantile pursuits " under the Bankruptcy Act. The court, however, makes a distinction between the buying and selling of such commodities for the public upon commission or as brokers and a case where a brokerage corporation actually bought such commodities with its

---

* See 30 U. S. Stat. at Large, 547, § 4, subd. b, as amd. by 32 id. 797, § 3. Since amd. by 36 U. S. Stat. at Large, 839, § 3.— [REP.

own funds and later sold the same at a profit, using the proceeds to again buy and sell in similar manner. It was held that a corporation engaged in the latter manner was engaged in " trading " and " mercantile " operations contemplated by the statute. The court said: " If this charter had solely constituted a brokerage business, its relation to the public might well have reserved it from the operations of the Act, but it does not limit its business to this. It allows it to trade on its own behalf in stocks, bonds, grain," etc.

In the case of *Commonwealth* v. *Natural Gas Co.* (32 Pitts. L. J. [Penn.] 309) the court reviewed the definitions of " merchant " and " mercantile " and concluded that " a ' mercantile ' partnership is one which habitually buys and sells, which buys for the purpose of afterwards selling." The court says: " The leading idea in all the definitions of a merchant, whatever restrictions as to the kind and extent of his business, has sometimes been thought necessary to justify the use of the word, is of one who both buys to sell again and who does both, not occasionally or incidentally, but habitually and as a business. This view of the subject is taken also by the Pennsylvania authorities. *Norris Brothers* v. *Commonwealth*, 3 Casey, 494; *Commonwealth* v. *Campbell*, 9 Casey, 380; to which may be added *Barton* v. *Morris*, 1 W. N. C. 543, decided in 1875 by Judge BIDDLE and acquiesced in no doubt because of his clear and satisfactory reasons." This definition of " mercantile " is given in Anderson's Law Dictionary, 671, citing *Commonwealth* v. *Natural Gas Co.* (32 Pitts. L. J. 309).

In the case of *Kansas City* v. *Lorber* (64 Mo. App. 604, 608) in defining the term " merchant " the court quotes the above definition as given in Anderson's Law Dictionary and also defines the term as " One who is engaged in the business of buying commercial commodities and selling them again for the sake of profit." (Citing Cent. Dict. p. 3713.)

In the case of *City of Kansas* v. *Collins* (34 Kans. 434; 8 Pac. Rep. 865, 866) the court said: " Where an agent, such as is usually denominated a ' drummer ' or ' commercial traveller,' simply exhibits samples of goods kept for sale by his principal, and takes orders from purchasers for such goods, which goods are afterwards to be delivered by the principal to the purchasers, and payment for the goods is to be made by the purchasers to the principal on such delivery, such agent is neither a peddler nor a merchant." (See, also, *Ex parte Taylor*, 58 Miss. 478.)

In *Graham & Anderson* v. *Hendricks* (22 La. Ann. 523, 524) the court said: " The phrase ' mercantile business ' has a definite meaning. It refers to the buying and selling of articles of merchandise as an employment. It implies operations conducted with

a view of realizing the profits which come from a skillful purchase, barter, speculation and sale."

While one of the shades of meaning of the word " mercantile " may be the one relied upon by the State Tax Commission, we believe that when qualifying or defining the business of a person or corporation within the meaning of the statute under consideration, it means a corporation engaged in buying to sell again and which does both, not occasionally or incidentally, but habitually and as a business, as indicated by the authorities above cited. The relator does no buying or selling aside from its principal. If it does any buying or selling, it does that business for its principal. In fact the relator as a broker was a mere medium of communication between the buyer and the seller as shown by the record and the principals bought and sold as between themselves. The relator never acted as principal. Moreover, all doubts as to the construction of a taxing statute must be resolved in favor of the taxpayer. (*Matter of Harbeck*, 161 N. Y. 211, 217; *City of Rochester v. Fourteenth Ward Assn.*, 183 id. 23, 30; *People ex rel. New York Mail & N. T. Co.* v. *Gaus*, 198 id. 250, 255.) Since one of the well-defined meanings of " mercantile " precludes the taxing of this relator, the intention of the Legislature is left doubtful " and a well-founded doubt as to the meaning of the act defeats the tax." (*People ex rel. Mutual Trust Co.* v. *Miller*, 177 N. Y. 51, 57.)

Therefore, the assessment against the relator was illegal and void and the determination of the State Tax Commission should be annulled, with fifty dollars costs and disbursements.

All concur.

Determination annulled, with fifty dollars costs and disbursements.