(51 App. Div. 77.)

PEOPLE ex rel. F. W. DEVOE & C. T. RAYNOLDS CO. v. ROBERTS, Comptroller.

(Supreme Court, Appellate Division, Third Department. May 2, 1900.)

TAXATION—EXEMPTION OF MANUFACTURING CORPORATION—CONSTRUCTION OF STATUTE.

A corporation incorporated under the laws of New Jersey exclusively as a manufacturing corporation, and engaged in this state in the manufacture of mixed paint, some of which is made from colors or pigments of its own manufacture, and some from an admixture of ingredients, none of which are made by it, but the proportions of which, as used in the manufacture of its paint, are known only to itself, and resulting in a new commercial article of value, recognized by a distinctive name, different from any of its ingredients, and produced by the use of capital, labor, and machinery, is a manufacturing corporation, wholly engaged in carrying on manufactures within this state, and is entitled, under the law, to exemption from taxation, to the extent of the capital thus employed, although a small part of its business, conducted in another state, is that of an importer of merchandise.

Application by the people on relation of the F. W. Devoe & C. T. Raynolds Company, against James A. Roberts, as comptroller of the state of New York, for writ of certiorari to review a decision of the comptroller revising an assessment of the capital stock of plaintiff employed in this state. Decision of comptroller modified and affirmed.

Argued before PARKER, P. J., and HERRICK, MERWIN, SMITH, and KELLOGG, JJ.

Edmund L. Cole (John B. Green, of counsel), for relator.

John C. Davies, Atty. Gen. (John H. Coyne, Dep. Atty. Gen., of counsel), for respondent.

HERRICK, J. The relator is incorporated under the laws of the state of New Jersey, exclusively as a manufacturing corporation, for the manufacture of varnish, paints, and other products and articles incidental to the paint and varnish trade. Its manufacturing business is carried on wholly within the state of New York. It makes what is known as dry colors, paints, and varnish. The dry colors, so called, are made by it from various chemicals. The process of such making is described in the testimony in the case, and I think as to such dry colors no question can be raised but what the process of making them is "manufacturing," within the meaning of the law. The principal business of the relator is making mixed paints. The dry colors are used in the making of colored paints by mixing with linseed oil, turpentine, and a dryer. Perhaps one-half of their product of mixed paints is made from colors or pigments manufactured by them, and the one-half from an admixture of ingredients none of which are made by them, as, for instance, white mixed paint, which is made from white lead, linseed oil, turpentine, and a dryer; none of these ingredients being made by the relator. The proportions of the various ingredients are known only to the maker of the paint. The oil and the white lead are put into what is known as an "iron mixer," with arms in it, by which the mixture is stirred up for several hours, until it becomes a homogeneous mass,—a paste. The paste is then taken out of the mixer, and put into a wooden tank. Then more oil is added, and turpentine and a dryer. The mixture is again stirred up, by mechanical power, for two or three hours, and the resulting mass is then ground in buhrstone mill, so that all small particles of undesirable matter in it are ground out. Then it is run into a receiving tank, ready to be placed in cans. None of the separate ingredients can be used for any of the purposes for which the mixed paint is used. The article thus produced by the relator is a commercial article of value, recognized by a specific and distinctive name,—a result of the use of capital, labor, and machinery. It is a new article, different from any of its ingredients, fitted for sale, use, and consumption, and is within the definitions of what constitutes a "manufactured article," and the making of it manufacturing. See Cent. Dict.; Stand. Dict.; Worcest. Dict.; People v. Roberts, 145 N. Y. 375, 40 N. E. 7; People v. Wemple, 129 N. Y. 543–552, 29 N. E. 808, 14 L. R. A. 708; Evening

Journal Ass'n v. State Board of Assessors, 47 N. J. Law, 38; Carlin v. Assurance Co., 57 Md. 515–526; U. S. v. Hathaway, 4 Wall. 404, 18 L. Ed. 395. The fact that the relator did not make the white lead or other pigments, the linseed oil, the turpentine, or the dryer does not take the process by which those several articles were combined to make paint without the process known as "manufacturing." It is not necessary to constitute one a manufacturer that he should make all the ingredients or articles which go to make up the finished product. People v. Morgan (Sup.) 63 N. Y. Supp. 76. It appears that, in addition to the manufacturing of paints, varnish, and articles incidental to such manufacture, the relator also imports some merchandise; constituting, however, but a small proportion of its business. All the business that it was carrying on in this state under its charter was manufacturing business, and within the case of People v. Campbell, 144 N. Y. 166, 38 N. E. 990, that portion of its capital employed in this state wholly in manufacturing is exempt from taxation, and that portion of it which was engaged or employed in other than manufacturing business—business which under its charter it was not authorized to do—was properly subject to taxation. The amount of such capital so employed, I understand, is practically undisputed, being for the year 1891 $84,000, and the tax thereon $126; for the year 1892 $125,000, tax $187.50; 1893 $104,000, tax $156; 1894 $101,000, tax $151.50; 1895 $97,500, tax $146.25. And the determination of the comptroller as to the tax for these several years should be modified accordingly, and, as so modified, his determination affirmed, with $50 costs and disbursements to the relator.

Determination of the comptroller modified in accordance with opinion, and as so modified affirmed, with $50 costs and disbursements to the relator. All concur.