THE CITY OF ROCHESTER, Appellant, *v.* FOURTEENTH WARD CO-OPERATIVE BUILDING LOT ASSOCIATION, Respondent, Impleaded with Others.

1. TAX — WHEN FAILURE TO ATTACH SEAL OF CITY TO ASSESSMENT ROLL MAY BE CURED BY ACT OF LEGISLATURE.   Where the charter of a city, and statutes amendatory thereof, regulating the procedure governing the assessment and collection of taxes, require the assessment roll to be delivered to the city treasurer with a warrant annexed "under the hand of the mayor and the seal of the city" commanding him to collect the taxes, and the seal is not affixed to the warrant of the mayor attached to an assessment roll for a certain year, such irregularity may be cured by a subsequent act of the legislature, for the seal of the city might have been dispensed with in the first instance; since "whatever the legislature might have dispensed with, or made immaterial by a prior statute, may be cured by a subsequent statute."

2. TAX SALE — FORECLOSURE OF EQUITY OF REDEMPTION — WHEN FAILURE TO SERVE NOTICE TO REDEEM UPON OWNER CANNOT BE CURED BY SUBSEQUENT ACT OF LEGISLATURE — CONSTRUCTION OF STATUTE (L. 1903, CH. 522).   Where such charter and amendatory statutes also provide that, when lands are sold for taxes and bid in by the city, the owner may redeem within two years — that if not redeemed within that period the city may within one year thereafter serve a notice upon the owner requiring him to redeem within thirty days after the service of such notice, and if not redeemed pursuant thereto the mayor is required to execute a certificate of the fact of sale, the purchase by the city and the failure to redeem — and when such certificate is recorded in the county clerk's office, the city or its assigns may take possession of the lands, but also provide that an equity of redemption is preserved which can be barred by the foreclosure thereof after the manner of foreclosing mortgages upon real estate by an action in the Supreme or County Court — an action for the foreclosure of the equity of redemption cannot be maintained

by the city unless there has been actual service of the notice to redeem upon the owner of lands previously sold for taxes; the failure to serve the notice is not cured by, nor can the action to foreclose be maintained under a subsequent act of the legislature declaring all taxes previously assessed legal and binding notwithstanding any irregularity, omission or error in the method of assessing and levying the same, and providing that such taxes may be collected either by action or supplementary proceedings or by foreclosure of tax liens, and declaring that such remedies shall be in addition to all other methods provided in the charter and not dependent upon them, or any of them, so that neither a sale by the city treasurer need be made nor any notice to redeem be given in order to foreclose a tax lien; since the remedy of foreclosure is not an additional remedy, because it was already given in the charter upon the completion of requirements essential to the validity of the tax; but inasmuch as some of such requirements had not been complied with the legislature provided by the curative act that the tax should be valid notwithstanding omissions in the method of assessing and levying the tax and gave the right of foreclosure upon that changed condition of affairs; in this sense only is the remedy of foreclosure new and not dependent upon such old methods as had not been complied with; furthermore, the "foreclosure of the tax liens" authorized by the curative act means the liens created by the record of the list of lands sold, and unredeemed, in the county clerk's office, and not the liens created by the levying of the tax.

*City of Rochester* v. *F. W. C. Building Lot Assn.*, 105 App. Div. 625, affirmed.

(Argued October 12, 1905; decided October 24, 1905.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 8, 1905, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at an Equity Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William W. Webb* for appellant. Taxes are directed by the charter of the city of Rochester to be levied upon the lands in said city, and, therefore, are liens upon the lands against which they are assessed. They are also specifically made liens upon lands by the act of 1903. (*Haight* v. *Mayor, etc.*, 99 N. Y. 280; *Collins* v. *Long Island City*, 132 N. Y.

321; *Matter of Munn,* 165 N. Y. 149.)  The act of 1903 provides new remedies for the collection of taxes which are absolutely independent of the methods of collection provided in the charter.  (*Matter of City of Rochester,* 77 App. Div. 28; *City of Rochester* v. *Farrar,* 44 Misc. Rep. 394; *Matter of Elsner,* 86 App. Div. 207; *McLean* v. *Mayor, etc.,* 134 N. Y. 480; *Blaschko* v. *Wurster,* 156 N. Y. 437.)

*William A. Sutherland* for respondent.  Service of notice to redeem from a city treasurer's tax sale served upon the owner of ·the premises is a jurisdictional prerequisite to the foreclosure of taxes.  (*Neber* v. *Hatch,* 10 Abb. [N. C.] 431.) The act of 1903 was not intended to, and does not, provide for the indiscriminate foreclosure of taxes in disregard or violation of the other provisions of the charter.  (*Hetzung* v. *City of Syracuse,* 92 Hun, 302; *Loomis* v. *City of Little Falls,* 66 App. Div. 299; 176 N. Y. 31; *Ensign* v. *Barse,* 107 N. Y. 329; 1 Desty on Taxn. 678.)

Vann, J.  The object of this action was to foreclose a tax lien upon lands in the city of Rochester pursuant to the provisions of the charter and certain special acts relating to that city.  As the facts found by the trial court received the unanimous approval of the Appellate Division, we must accept them as final.  The material facts thus found are that in 1901 the lands in question were assessed in accordance with law for general city purposes to the amount of $4.60; that they were subsequently sold by the city treasurer for non-payment of said tax and struck off to the city; that no notice to redeem from the tax sale was ever served upon the respondent, the owner of the premises, but by mistake such notice was served upon one who was neither the owner nor occupant.  The complaint was dismissed because no notice of redemption had been served on the proper person and it was held that chapter 522 of the Laws of 1903 does not authorize the foreclosure of a tax lien until after the service of such a notice. That act is a curative statute which is relied upon by the

appellant to justify its attempt to foreclose without comply-
ing with the provisions of the charter relating to the sale of
lands for unpaid taxes and the service upon the owner of a
notice to redeem.

In order to properly construe the curative act it is neces-
sary to look at the original statute so as to discover what its
requirements are, for it was the failure to comply with some
of those requirements that made the later act necessary.   In
thus learning the mischief to be remedied, we discover the
object of the remedial statute and are led to the proper
interpretation of its provisions.

The city of Rochester is a city of the second class and to
some extent is governed by the White Charter, so called,
which went into effect on the first of January, 1900, and to
some extent by the old charter, passed in 1880 and frequently
amended, as well as by certain special laws which, so far as
they relate to the procedure governing the assessment and
collection of taxes, are still in force.   (L. 1880, ch. 14, as
amended ; L. 1898, ch. 182.)   The old charter contains an
elaborate system for the assessment and collection of taxes,
nearly two hundred sections being devoted to the subject.   It
provides the method of assessment by the assessors, including
the levy of taxes by the common council, and requires the assess-
ment rolls to be delivered to the city treasurer with a warrant
annexed " under the hand of the mayor and the seal of the
city," commanding him to collect the taxes.   Public notice is
given by the treasurer as to the time and place when taxes may
be paid to him and the amounts to be added if payment is not
made within the periods specified.   No fee is charged on taxes
paid during the month of May, but on those paid after the
last day of May an addition of one per cent each month for
the next five months is made, and after the fifteenth of Sep-
tember interest is charged at the rate of twelve per cent per
annum.   The city treasurer is required to issue his warrant
for the collection of all taxes remaining unpaid on the fifteenth
of October by distress and sale of the goods and chattels of
the persons liable.   As to all taxes returned unpaid the city

treasurer is directed to advertise and sell the lands covered
thereby at public auction to the bidder who will take the
premises for the shortest term and pay the tax, fees and
·expenses. If no one bids the amount called for, the land is
struck off to the city. Two years are given within which the
owner may redeem by paying the taxes, charges and interest.
Within one year after the expiration of that period of redemp-
tion the purchaser may serve a notice upon the landowner
requiring him to redeem within thirty days. If the lands bid
in by the city are not redeemed pursuant to the notice, the
mayor is required to execute a certificate of the fact of sale,
the purchase by the city and the failure to redeem, and when
such certificate is recorded in the Monroe county clerk's office
it becomes *prima facie* evidence as to the legality of the tax
and the regularity of all proceedings to the date thereof.

It is the duty of the city treasurer to cause a list of all lands
sold, " specifying when, to whom, for what time and the
amount," to be recorded by the county clerk of Monroe county,
and thereupon " the amount of such sale on each lot or parcel
of land shall be a lien thereon and take precedence of all
incumbrances whatever." When the mayor's certificate is
recorded, the city or its assigns may take possession of the
lands, but an equity of redemption is preserved which can be
barred by the foreclosure of the equity of redemption after
the manner of foreclosing mortgages upon real estate, by an
action in the Supreme Court or the County Court of Monroe
county.

While the old charter and certain special acts contain many
other provisions relating to the subject, we have enumerated.
enough to show that there could be no foreclosure by the city
until after the mayor and treasurer had performed their
duties. As the seal of the city was not affixed to the warrant
of the mayor attached to the assessment roll for the year
1901 when it was delivered to the city treasurer, there could
be no valid sale by him or foreclosure by the city without
further legislation. This irregularity could be cured by the
legislature, for the seal of the city might have been dispensed

with in the first instance. "Whatever the legislature might have dispensed with, or made immaterial by a prior statute, may be cured by a subsequent statute." (*Smith* v. *City of Buffalo*, 159 N. Y. 427, 433.) This was one of the objects of the act of 1903, which, so far as it is now material, is as follows: "All taxes heretofore spread upon the assessment rolls of the various wards in the city of Rochester are hereby validated, and rendered legal and binding upon the persons taxed and property assessed, notwithstanding any irregularity, omission or error in any of the proceedings relating to the same, or in the making, levying and assessment of the same, and all proceedings for the collection of such taxes are hereby declared valid and effectual, notwithstanding any irregularity, omission or error in any of such proceedings, and notwithstanding the omission from any tax warrant of the seal of the mayor of the city of Rochester." (L. 1903, ch. 522, § 1.)

"Section 3. All taxes heretofore spread upon the assessment rolls of the various wards in the city of Rochester, may be collected by the corporation counsel, either by action, or by supplementary proceedings, or by foreclosure of tax liens, without regard to the date when the said taxes were so spread, and the Statute of Limitations cannot be interposed as a defense thereto. The remedies herein provided shall be in addition to the other methods provided in the charter of the city of Rochester for the collection of taxes in the said city of Rochester, and not dependent upon them, or any of them. No certificate of the mayor of the city of Rochester, made by said mayor under section 104 of the charter of said city, of failure to redeem lands sold for taxes, now or hereafter recorded in the office of the county clerk of Monroe county, shall be discharged until all city taxes which are a lien upon the premises described in the said certificate, shall have been paid. Notice to redeem from sale for taxes, may be served at any time after the expiration of two years from the date of said sale. Upon the foreclosure of tax liens in actions brought in the supreme and county courts, all taxes due the city of Rochester may be included in the action of fore-

closure and be satisfied from the proceeds of the sale of the premises."

It is contended in behalf of the city, although the action was not brought on that theory, that the object of this curative act was not only to correct all irregularities and omissions in the assessment of taxes and in the proceedings to collect the same, but to provide new remedies for the collection of taxes wholly independent of the methods provided by the charter. It is claimed that neither a sale by the city treasurer need be made, nor any notice to redeem given in order to foreclose a tax lien. It may be that the statute admits of this construction, but before we conclude that the legislature intended to provide such a harsh and oppressive remedy we should study the act with diligence to see whether another construction, less severe upon the owner and equally effective for the city, is not reasonable and practicable. The construction thus contended for encounters difficulties other than the harshness of the result. When, it may be asked, may the city resort to foreclosure? Can it be that the legislature intended to allow the heavy costs of such an action to be imposed upon the taxpayer as soon as the tax becomes due and payable, without any effort to collect it by the ordinary methods? If no sale is required by the treasurer and no remedy provided by the old charter is to be exhausted before the right to resort to foreclosure, there is nothing to prevent the city from foreclosing as soon as the tax becomes a lien and every tax becomes a lien upon the lands affected " from the time of the passage of the resolution of the common council * * * and the confirmation by said common council of the roll containing the same." (L. 1897, ch. 784.) The curative act does not specify when the foreclosure may be commenced nor on what proof it is to be founded. It simply provides that a tax lien may be foreclosed, but makes no specification as to time or default. Does the owner have any time to pay without liability to the costs of foreclosure? If so, what time? Is it during the month of May when, according to the old charter, he can pay without fees? Is it during the month of June

when one per cent is added? Is it during any of the four months immediately following, during each of which another addition is made by way of penalty for not paying? Is it when the city treasurer issues his warrant and it is returned uncollected? Is it after a sale has been made or is it after all these proceedings have been had and the pressure of the statute exhausted by the service of a notice to redeem, which is contemplated by the curative act, for it is expressly mentioned therein? The legislature intended either to give the city power to foreclose as soon as the tax becomes a lien, or else did not confer that power until after all the proceedings to collect the tax mentioned by the old charter had been taken by the treasurer and a notice to redeem duly given to the owner after the expiration of the period of two years. There is no middle ground to stand upon. There is an immediate right to foreclose, or else no right until the charter method of collection has been exhausted.

What does the word "foreclosure" imply, especially when read in the light of the provisions of the old charter relating to the subject? What is foreclosed? The old charter says, "the equity of redemption in said lands struck off to the city." What is there to redeem from unless a sale has been had? What does "equity of redemption" mean as used in the statute unless some right of the owner has already been imperiled, but he still has the right to redeem his land from the sale by paying the tax and expenses? A taxing statute is to be construed strictly as to the taxing power and liberally as to the owner, not only because the legislature in authorizing proceedings to divest a freeholder of his land is presumed to take unusual care to make its meaning plain, but because the citizen needs more protection than the state. (*People ex rel. Mutual Trust Co.* v. *Miller*, 177 N. Y. 51, 57; *Matter of Harbeck*, 161 N. Y. 211, 217; *Matter of Fayerweather*, 143 N. Y. 114, 119.) The courts below, construing the statute according to this rule, have held in effect that there can be no foreclosure until after the notice to redeem has been served, and that method of procedure is still

open to the city, for the old limit of one year has been abolished and the notice may be served at any time after the expiration of two years from the date of sale by the treasurer. The city is fully protected, for it still has a complete remedy available, with interest at twelve per centum running in its favor in the meantime. We think this construction is the more reasonable, not only because it is less oppressive, but because it accords with the real meaning of the terms "foreclosure" and "equity of redemption," as well as with the analogies of the law relating to the collection of taxes throughout the state. Whoever heard of a statute authorizing the foreclosure of a tax lien with the attendant costs, in many cases largely exceeding the amount of the tax, before any effort has been made by the municipal government to collect by ordinary methods? While the legislature could do this, we do not think it has done it.

The learned counsel for the appellant, in order to justify the construction he contends for, relies especially upon the following sentence, which appears in the curative act almost in direct connection with the provision relating to the service of a notice to redeem: "The remedies herein provided shall be in addition to the other methods provided in the charter of the city of Rochester for the collection of taxes in the said city of Rochester and not dependent upon them or any of them." This seems plain when read by itself, but it is not plain when read in connection with the old charter. The remedy of foreclosure was not an additional remedy because it had already been provided. The foreclosure authorized by the old charter, however, depended upon what had actually been done by the mayor, treasurer and other officers of the city, when their acts were essential to the validity of the tax. The requirements of the statute had not, in fact, been complied with, for the mayor had failed to attach the seal of the city to his warrant to the treasurer and the courts had held that on this account the treasurer had no authority to collect the taxes. (*Matter of City of Rochester* v. *Bloss*, 77 App. Div. 28; 173 N. Y. 646.) What had been done,

therefore, was not enough to authorize foreclosure according to the old charter, and hence the legislature provided that the proceedings to collect the tax should be valid notwithstanding such omission and gave the remedy of foreclosure based upon that changed condition of affairs. The omissions were made immaterial and the right to foreclose given on that basis. In this sense only, as we read the act, was the remedy of foreclosure "in addition to the other methods provided in the charter of the city of Rochester for the collection of taxes." In this sense only was the new remedy of foreclosure not dependent upon such old methods as had not been complied with, although it was dependent upon what had been done according to law, after all omissions had been cured by the legislature and the procedure which had not been followed made the same in effect as if it had been strictly pursued.

We are also of the opinion that the "foreclosure of tax liens" authorized by the curative act, means the liens created by the record of the list of lands sold in the county clerk's office, and not the lien created by the levying of the tax by the common council. When the lien becomes a matter of record in the office which contains a history of all titles in the county it is dignified in the statute by the name of a tax lien, which may be foreclosed in a court of record the same as a mortgage lien when a mortgage is recorded in that office.

It is, however, argued that according to the curative act, an action at law may be commenced to recover the amount of the tax as soon as it becomes due, without any sale by the treasurer, and that this remedy is nearly as severe as an action of foreclosure. If this is so, and we are not now required to pass upon the question, it does not follow that the legislature intended to give two drastic remedies, each involving the imposition upon the taxpayer of costs out of all proportion to the amount of the tax, instead of one.

We have reached the conclusions announced not without hesitation, for whatever construction is adopted serious difficulties are encountered. The real meaning of the legislature is not clear, but all doubts as to the construction of a taxing

statute are to be resolved in favor of the taxpayer, and we resolve those doubts in this case by affirming the judgment appealed from, with costs.

GRAY, BARTLETT, HAIGHT and WERNER, JJ., concur; CULLEN, Ch. J., dissents; O'BRIEN, J., absent.

Judgment affirmed.