there were such use, whether the master knew it or in the exercise of due care ought to have known it. And only after proof sufficient to charge the master with such knowledge, actual or constructive, could the ultimate question arise whether in the exercise of due care the master could and should have prevented the casualty. There is no proof of such actual knowledge; and the proof to impute knowledge must be found, if at all, in the testimony of the said Sullivan, who testifies that during the month or two that he worked there, when he saw "men" walking towards Chatham Square, they walked on the ties of the center track (on which there were no rails), and that "then" they would cross over the planks. "Q. Before the accident, have you seen flagmen and trackwalkers walking across these planks? A. Yes, sir. Q. Is that the only way you have seen them walking towards Chatham Square? A. Yes, sir. Q. And you had walked over them yourself, had you not? A. Yes, sir."

[2, 3] In the first place, this at most is but the knowledge of a coservant not imputable to the master. And, in the second place, this testimony but shows that persons walking on the structure, who naturally would walk either along tracks whereon the trains were running or along the center track, when they came to the opening and wished to continue their course, necessarily used the planks to cross the opening. But there is no proof in this testimony quoted that trackwalkers in the discharge of their duties ever took such course. Sullivan may have seen men who were employed as flagmen or trackwalkers use these planks when they wished to pass along the structure to reach the station, but that is quite different from proof that trackwalkers, when in the discharge of their duties as such or when going about those duties, were accustomed to stand upon these planks or to pass over them. Moreover, as I have said, there is undisputed testimony that the duties of the trackwalkers required them to walk along the tracks, and the preponderance of testimony is that the method of those walking in the tracks, whenever trains were worked, to avoid these trains, was to seek the girder.

The testimony does not justify the conclusion that the master in the exercise of due care ought to have known that his servants, while in his service or in seeking their places of work, were accustomed to use these planks either for standpoint or for passage, and therefore the judgment against the master cannot stand, but it and the order must be reversed and a new trial must be granted, costs to abide the event. All concur.

---

### In re JOURDAN'S ESTATE.

(Supreme Court, Appellate Division, Second Department. May 1, 1912.)

TAXATION (§ 886½*)—INHERITANCE TAX—RATE.

> Under Laws 1910, c. 706, relating to taxable transfers, providing a tax on transfers to a father, mother, widow, or minor child of one per cent. on the excess over $5,000, to be known as the primary rate, and that, where the property transferred amounts to more than $25,000 over and above the exemptions, it shall be taxable on all amounts in excess of $25,000 up

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to and including the sum of $100,000 at twice the primary rate on all amounts in excess of $100,000, and up to and including $500,000 at three times the primary rate, etc., only the remainder of the first $100,000 after deducting the $25,000 taxable at the primary rate, or $75,000, is taxable at twice the primary rate; the same rule applying to the amounts taxable at each of the higher rates specified by the statute.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 886½.*]

Jenks, P. J., and Carr, J., dissenting.

Appeal from Surrogate's Court, Kings County.

Proceedings for the appraisal of the estate of James Jourdan, deceased, under the Transfer Tax Law. From an order of the Surrogate's Court affirming a taxing order on the taxable legacy of Emma Jourdan, William Sohmer, Comptroller, appeals. Reversed and remitted.

See, also, 70 Misc. Rep. 159, 128 N. Y. Supp. 728.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and WOODWARD, JJ.

William Law Stout, of New York City (George W. McElroy, of New York City, on the brief), for appellant.

William N. Dykman, of Brooklyn (Francis L. Archer, of Brooklyn, on the brief), for respondent.

WOODWARD, J. James Jourdan, by a last will and testament, gave all of his estate, both real and personal, to his widow. The cash value of this estate was fixed, for the purposes of the transfer tax, at $2,141,000.48, upon which a tax of $83,050.02 has been assessed, made up as follows:

| | | |
|---|---|---|
| $    25,000 00 at 1 per cent......................................... | $    250 | 00 |
| 100,000 00 at 2 per cent......................................... | 2,000 | 00 |
| 500,000 00 at 3 per cent......................................... | 15,000 | 00 |
| 1,000,000 00 at 4 per cent......................................... | 40,000 | 00 |
| 516,000 48 at 5 per cent......................................... | 25,800 | 02 |
| Total ........................................................ | $83,050 | 02 |

The state comptroller appeals from the order fixing this tax, on the ground that, under the provisions of chapter 706 of the Laws of 1910, the assessment should have been made upon a basis which would produce a tax of $90,800.02, and we are of the opinion that he is entirely right in this contention. The statute provides, in so far as it relates to the question here involved, that:

"No such tax shall be assessed upon property real or personal, or any beneficial interest therein so transferred to a father, mother, widow or minor child of the decedent, grantor, donor, or vendor, if the amount so transferred to such father, mother, widow or minor child is the sum of five thousand dollars or less; but if the amount so transferred to a father, mother, widow or a minor child is over five thousand dollars the excess shall be taxable at the rate of one per centum upon the clear market value of such property as hereinbefore provided. The rates of taxation hereinbefore prescribed in this and the preceding section are hereby designated as 'primary rates.' Whenever any property, real or personal, or any beneficial interest therein which passes by any such transfer to or for the use of any person or corporation,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

shall exceed the amount of twenty-five thousand dollars over and above the exemptions hereinbefore provided the rate of taxation shall be as follows: Upon all amounts in excess of the said twenty-five thousand dollars and up to and including the sum of one hundred thousand dollars, twice the primary rates; upon all amounts in excess of the said one hundred thousand dollars and up to and including the sum of five hundred thousand dollars, three times the primary rates; upon all amounts in excess of the said five hundred thousand dollars and up to and including the sum of one million dollars, four times the primary rates; upon all amounts in excess of the said one million dollars, five times the primary rates."

It would be difficult to devise more exact language to convey an idea, and yet the learned surrogate has argued himself into the conclusion that this language does not mean what it says, but that it means something entirely different, and which operates to deprive the state of several thousands of dollars of revenue. The scheme of the statute is very clear. It provides in the case of a widow and some others that there shall be an exemption of $5,000. If there is an amount in excess of this sum, then a tax of 1 per cent. is to be assessed upon such excess up to $25,000, and this sum of $25,000 is the limit of the primary rate. In other words, a tax of 1 per cent. is assessed against each and every estate in excess of the exemptions up to the sum of $25,000. This is, in contemplation of the statute, the normal or primary estate to be transferred. When a larger estate is to be transferred, it must be subjected to a heavier burden, and so it is provided that, where the amount is in "excess of the said twenty-five thousand dollars and up to and including the sum of one hundred thousand dollars, twice the primary rates" shall be assessed, and so on through an ascending scale. Obviously the clear intent of this act is to place an assessment of 1 per cent. upon the first $25,000 above the exemption, then 2 per cent. upon all excess above $25,000 up to and including $100,000, then 3 per cent. upon all sums in excess of $100,000 up to and including $500,000, then 4 per cent. upon all sums in excess of $500,000 up to and including $1,000,000, and then 5 per cent. upon all sums in excess of "the said one million dollars." There is no ambiguity in this language; and, therefore, no room for construction. The statute means just what it says, and it says the assessment shall be made at certain rates upon the first twenty-five thousand dollars above exemptions, and upon all sums in excess of "said twenty-five thousand dollars and up to and including the sum of one hundred thousand dollars," at a different rate, and this means that, if there should be $50,000 transferred, it would be subject to 1 per cent. on $25,000 and 2 per cent. upon an equal amount, and this rate would prevail "up to and including the sum of one hundred thousand dollars." If it reached in excess of $100,000, then upon all such excess the rate would be 3 per cent. "up to and including $500,000," which would in the present case involve the sum of $400,000 to be assessed at 3 per cent., and so on until it embraced the entire estate of over $2,000,000. The effort to make this language fit the assessment which has been made is ingenious, but not convincing. It requires all too much of argument in a case which is not open to construction, which is in and of itself its own construction.

The order appealed from should be reversed, with $10 costs and disbursements.

BURR and THOMAS, JJ., concur.

JENKS, P. J. I dissent. The provision of the Transfer Tax Law pertinent to the question presented reads as follows:

"The rates of taxation hereinbefore prescribed in this and the preceding section are hereby designated as 'primary rates.' Whenever any property, real or personal, or any beneficial interest therein which passes by any such transfer to or for the use of any person or corporation, shall exceed the amount of twenty-five thousand dollars over and above the exceptions hereinbefore provided the rate of taxation shall be as follows: Upon all amounts in excess of the said twenty-five thousand dollars and up to and including the sum of one hundred thousand dollars, twice the primary rates; upon all amounts in excess of the said one hundred thousand dollars and up to and including the sum of five hundred thousand dollars, three times the primary rates; upon all amounts in excess of the said five hundred thousand dollars and up to and including the sum of one million dollars, four times the primary rates; upon all amounts in excess of the said one million dollars, five times the primary rates."

The question is the interpretation of the sentence:

"Upon all amounts in excess of the said twenty-five thousand dollars and up to and including the sum of one hundred thousand dollars, twice the primary rates."

The learned surrogate has decided that the maximum amount subject to twice the primary rates is $100,000; i. e., that, after $25,000 has been taxed at the primary rate, then $100,000 is to be taxed at twice that rate. My associates hold that the maximum amount is $75,000, instead of $100,000. The language is susceptible of still another interpretation, namely, that, whenever an amount is greater than $25,000, that amount up to and including the amount of $100,-000, not first excising $25,000 thereof as subject to the primary rate, is subject to twice the primary rate.

Here is plain indication that "the real meaning of the Legislature is not clear," and hence the rule obtains that "all doubts as to the construction of a taxing statute are to be resolved in favor of the taxpayer." City of Rochester v. Fourteenth Ward Association, 183 N. Y. 23, 75 N. E. 692; Matter of Enston, 113 N. Y. 174, 21 N. E. 87, 3 L. R. A. 464. In the latter case the court say:

"But the executors come into court claiming that the special taxation provided for in the law of 1885 is not applicable to them, or the property which they represent. In such a case they have the right, both in reason and in justice, to claim that they shall be clearly brought within the terms of the law before they shall be subjected to its burdens. It is a well-established rule that a citizen cannot be subjected to special burdens without the clear warrant of the law. The following authorities furnish the true rule applicable to such a case: Cooley on Taxation (2d Ed.) 275; United States v. Wiggleworth, 2 Story, 373 [Fed. Cas. No. 16,690]; Powers v. Barney, 5 Blatch. 203 [Fed. Cas. No. 11,361]; United States v. Watts, 1 Bond, 583 [Fed. Cas. No. 16,653]; Doe v. Snaith, 8 Bing. 152; Green v. Holway, 101 Mass. 248 [3 Am. Rep. 339]."

As between the surrogate and my associates, I am inclined to adopt the conclusion of the surrogate. In order to declare that the max-

imum amount that is subject to only twice the primary rates if $75,000, that amount must, not only satisfy the statute that it is "in excess of the said twenty-five thousand dollars," but the other requirement thereof, "and up to and including the sum of one hundred thousand dollars." This requirement is not met by $75,000, save by the construction that the words "in excess" mean the difference between $25,000 and $100,000. It is well recognized that the expression "in excess" may indicate the difference between two numbers. But the question is whether they were used to express this idea in this instance. In a foregoing part of this very section the Legislature has provided:

"But if the amount so transferred to a father, mother, widow or a minor child is over five thousand dollars the excess shall be taxable at the rate of one per centum," etc.

Then follows the provision heretofore quoted. Here is a plain direction that "the excess" shall be taxable. There is no apparent reason, if the Legislature intended that only "the excess" of $100,000 over the $25,000, namely, $75,000, should be subject to twice the primary rates, that it would not have employed the same language to express the same idea. Certainly there would have been uniformity in expression if, for example, the Legislature had enacted, "but if the amount transferred is over twenty-five thousand dollars the excess up to one hundred thousand dollars shall be taxable at twice the primary rates." But, instead of using such expression, or one synonymous, it departs to provide "upon all amounts in excess of the said twenty-five thousand dollars and up to and including the sum of one hundred thousand dollars." It is not the "excess," but upon "all amounts in excess." It is not the excess up to $100,000, or even all amounts in excess up to $100,000, but "all amounts" including "the sum of one hundred thousand dollars." And then a further provision reads, "Upon all amounts in excess of the said one hundred thousand dollars," so that the said $100,000 as theretofore used is not regarded as having expressed the limit, but as an amount which is subject to twice the primary rates only.

As between the two constructions up for review, I think the words "all amounts in excess" refer to any amount that is greater than, larger than, and thus exceeds $25,000 up to and inclusive of the amount of $100,000. I vote to affirm the order.

CARR, J., concurs.